1   David R. Markham (SBN 071814)
    *dmarkham@markham-law.com*
2   Peggy J. Reali (SBN 153102)
    *preali@markham-law.com*
3   Janine R. Menhennet (SBN 163501)
    *jmenhennet@markham-law.com*
4   Maggie Realin (SBN 263639)
    *mrealin@markham-law.com*
5   **THE MARKHAM LAW FIRM**
    750 B Street, Suite 1950
6   San Diego, California 92101
    Tel.: (619) 399-3995
7   Fax: (619) 615-2067
    [Additional counsel list on next page]
8

9   Attorneys for Plaintiffs

10                **UNITED STATES DISTRICT COURT**

11               **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  NASHONNA COLEMAN, an individual,  )  CASE NO. 11-cv-1301 MMA (DHB)
    on behalf of herself and all others    )  <u>CLASS ACTION</u>
14  similarly situated,                     )
                                            )  Hon. Michael M. Anello
15                                          )  Courtroom 5
                Plaintiffs,                 )
16                                          )  **JOINT MOTION FOR**
        v.                                  )  **DETERMINATION OF DISCOVERY**
17                                          )  **DISPUTE**
    JENNY CRAIG, INC., A Delaware           )
18  corporation, and DOES 1 to 100,        )  Honorable David H. Bartick
                                            )  Magistrate Judge
19                                          )
                Defendants.                 )  Action Filed:      6/13/2011
20  _____       )  Trial Date:        None Set

21

22

23

24

25

26

27
                                1
28  _____
    *Coleman et al. v. Jenny Craig, Inc.*, Case No. 11-cv-1301-MMA(DHB)
                                    JOINT MOTION FOR
              DETERMINATION OF DISCOVERY DISPUTE

1  R. Craig Clark (SBN 129219)
2  *cclark@clarklawyers.com*
   **THE CLARK LAW FIRM**
3  600 B Street, Suite 2130
4  San Diego, California 92101
   Tel: (619) 239 1321
5  Fax: (619) 239 5888

6
   Barron E. Ramos (SBN 179620)
7  *bramos@mylawpro.com*
8  **HESS-VERDON AND ASSOCIATES PLC**
   620 Newport Center Drive, Ste. 1030
9  Newport Beach, California 92660
10 Tel: (949) 706-7300; Fax: (949) 706-7373

11 Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.   **INTRODUCTION**

This is a putative class action brought by Nashonna Coleman, on behalf of hourly employee, alleging that defendant Jenny Craig, Inc. ("Defendant," "Jenny Craig," or "JCI") failed to pay overtime wages worked, failed to provide meal and rest breaks, failed to provide required information on pay checks and stubs, failed to pay wages within the applicable statutory period, failed to pay all wages upon termination of employment, engaged in unfair business practices, and violated the Federal Fair Labor Standards Act and various sections of the California Labor Code. Jenny Craig denies each of the allegations. The putative class period is a limited one, beginning March 18, 2010 (or June 1, 2010) through June 2011.

This discovery dispute concerns whether Jenny Craig should be required to produce, in pre-certification discovery, (1) the contact information of putative class members; (2) other records pertaining to class members, to include: payroll records, work schedules, time cards, as well as other computerized records that show the date and time of various transactions; and (3) "Message Board" records (an internal discussion board for JCI employees).

II.   **DISCOVERY DISPUTE**

The dispute at issue involves Defendant's responses to Plaintiff's Special Interrogatories (Set Two) ("Interrogatories"), served by Defendant on April 29, 2013 (see **Exhibit 1** attached hereto to the Declaration of Peggy J. Reali ("Reali Decl."));[1] and responses to Plaintiff's Requests for Production (Set Two) ("RPD-2") (**Exhibit 2**) and Requests for Production (Set Three) ("RPD-3") (**Exhibit 3**), both served on May 3, 2013.

The dispute pertains to the following issues:

---

[1] All Exhibits identified by numbers are to the Declaration of Peggy J. Reali, filed concurrently herewith. All Exhibits identified by letters are to the Declaration of R. Dale Dixon, Jr., also filed concurrently herewith.

( 1 )   The production by Defendant of the contact information of putative class members (Defendant has provided the last names only of 144 of the 395 class members, but has not provided the contact information; Plaintiff seeks the contact information for all 395 class members) (**Exh. 1**, Interrogatories, Nos. 14, 17 and 18);

( 2 )   The production by Defendant of records of putative class members, to include (Defendant has already produced, or has stated it will produce, the following records as to only Plaintiff Coleman):

( a )   payroll records of putative class members  (**Exh. 2**, RPD-2, No. 30);

( b ) "SONIC" records.  SONIC is a customer relationship management system that tracks and stores all interactions with customers from enrollment through appointments through purchasing food and accessories, , which system keeps track of purchases and other transactions by date and time or transaction.  (**Exh. 2**, RPD-2 Nos. 18, 20, 22); and Exhibit 7, Deposition of Eric Matson taken May 14, 2013 ("Matson Depo.")(rough transcript), at p. 3;

( c ) "eTime" records (time cards) (**Exh. 3**, RPD Nos. 39, 41);

( d ) work schedules  (**Exh. 2**, RPD-2, No. 28); and

( e ) "Ghant Chart" records (records of client schedules) (**Exh. 2**, RPD-2 Nos. 18, 20, 22); and

( 3 ) Message Board records.  The Message Board is a JCI internal discussion board that is available to all JCI employees through its intranet, and on which limited inquiries or posts of varying content can be made. (**Exh. 2**, RPD-2, Nos. 15, 16).

The parties met and conferred in person on May 8 and May 14, 2013 to discuss all the issues presented, and further met and conferred telephonically and by email on May 10, May 14 and May 15, 2013.  Reali Decl., ¶4.

## III.   PLAINTIFF COLEMAN'S ARGUMENT

### A.   Legal Standard for Motions to Compel

Federal Rule of Civil Procedure 26(b)(1) states, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Because the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute,  Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial. *U.S. ex rel. Schwartz v. TRW, Inc.,* 211 F.R.D. 388, 392 (C.D. Cal. 2002) (internal citations omitted).

Federal Rule 37(a)(2)(B) allows the discovering party to move for an order compelling a response to a discovery request.  This rule establishes "a flexible means by which a court may enforce compliance with the Federal discovery procedures through a broad choice of remedies and penalties." *Murray v. City of Carlsbad,* et al., No. 08-2121, 2010 WL 2612698, at *1 (S.D. Cal. June 25, 2010), citing *B.F. Goodrich Tire Co. v. Lyster,* 328 F.2d 411, 415 (5th Cir. 1954).

### B.   Plaintiff is Entitled to the Contact Information of Putative Class Members as the Information is Relevant; and Its Relevance Outweighs the Privacy Concerns of Putative Class Members.

Defendant objects to Plaintiff's request for the contact information of putative class members, claiming, in essence:  ( 1 ) the information is not relevant; ( 2 ) the information is protected from disclosure on ground of privacy; ( 3 ) the request is overly broad, burdensome and oppressive; and ( 4 ) it is protected by the attorney

5

1   work product doctrine and attorney-client privilege.

2   **( 1 )   Courts Have Confirmed that Class Action Plaintiffs are Entitled to**
3   **Class Discovery**

4         The United States Supreme Court has found that class counsel in <u>Federal Rule</u>

5   <u>of Civil Procedure</u>, Rule 23 class actions must be permitted communications with

6   potential class members for the purpose of notification and gathering information,

7   even prior to class certification. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02,

8   (1981).   The Ninth Circuit has confirmed that prior to certification of a class, some

9   discovery regarding the class may be appropriate. See *Vinole v. Countrywide Home*

10   *Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("Our cases stand for the unremarkable

11   proposition that often the pleadings alone will not resolve the question of class

12   certification and that some discovery will be warranted.")  Discovery is warranted

13   where the requested discovery will resolve factual issues necessary for the

14   determination of whether the action may be maintained as a class action. *Kamm v.*

15   *Cal. City Dev.Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

16         Courts have routinely allowed plaintiffs to obtain the contact information of

17   putative class members in wage and hour class action litigation.   In doing so, the

18   courts have balanced the privacy interests of the putative class members, against the

19   need for the requested information. *See Putnam v. Eli Lilly & Co.*, 508 F.Supp.2d

20   812, 814 (C.D. Cal. 2007); *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal.

21   August 8, 2011); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 507 (C.D.

22   Cal. 2011).

23         To date, Defendant has produced the names, but not the contact information,

24   of 144 out of the 395 putative class members.  The privacy of class members can be

25   assured either through a protective order, or through an "opt-out" procedure.

26

27

28

### ( 2 )   The Class Contact Information is Relevant

Plaintiff needs the contact information of putative class members to determine whether common questions of law or fact exist and if Plaintiff's claims are typical.

Defendant has a policy that there has to be at least two persons in a store at all times, therefore in smaller stores lunches were short or missed because the person could not take the lunch.  Reali Decl., ¶5; **Exhibit 6**, Deposition of Nashonna Coleman taken January 15, 2013 ("Coleman Depo.) at 84:4-13.  Plaintiff testified that she was told by management that because there was too much overtime, she had to clock in and clock out as set by her schedule, although she came in early and stayed late to open and close the Centre, such that she worked overtime and was not paid for it.  Exhibit 6, Coleman Depo, 72:12-20; 73:6-10, 19-23; 74:4-8; 117:11-118:11; 118:21-25; 119:14-24; 144:7-19; 149:16-22; 176:2-13; 202:3-14.

Speaking with putative class members will allow Plaintiff to show that other class members were unable to take lunches within the time imposed by statute (if at all), and were not paid the required premium; were unable to take rest breaks and not paid the premium; and worked overtime hours without being paid for their work. This evidence is needed, because Plaintiff's testimony of what she has heard from other employees about their experiences being the same as hers, is (*arguendo*) not admissible evidence.  Consequently, Plaintiff needs to obtain the evidence directly from the class members.  Moreover, the information Plaintiff seeks are records in the exclusive possession of Defendant.  Reali Decl., ¶6.

In some cases, courts have denied plaintiffs' request for the contact information of putative class members, typically because plaintiffs in those cases made little or no showing for a need for the information, and are therefore completely distinguishable.

In *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985), the Court denied

1  plaintiff's request for putative class member contact information, because the
2  plaintiff relied only on two prior complaints filed elsewhere by similar plaintiffs
3  against the same defendant to demonstrate a likelihood that discovery would
4  substantiate class allegations. *Mantolete*, at 1425. In the case at bar, Plaintiff relies
5  on her own case allegations and needs the information to obtain evidence in support
6  of, at the very least, commonality and typicality, described above.

7  In *Maes v. JP Morgan Chase*, 2013 WL 811839 (S.D. Cal. March 5, 2013),
8  Magistrate Judge Dembrin in the Southern District of California denied plaintiff's
9  motion to compel the contact information of putative class members, because
10 Plaintiff had offered no evidence that the discovery sought would likely substantiate
11 the class allegations, and because plaintiff already had between 10% - 30% of the
12 class members' contact information. *Maes*, at *2. If Plaintiff had not had contact
13 information of a sufficient number of class members, the "... *Court would have*
14 *authorized some discovery*." *Id* (emphasis added). In the case at bar, Plaintiff does
15 not have the contact information for any putative class member, but has made a
16 showing that discovery is likely to produce substantiation of the class allegations.
17 *See Mantolete*, at 1425; *Maes*, at *2.

18          **( 3 )   Privacy Concerns of Class Members are Effectively Resolved**
19              **through Use of a Protective Order, or an "Opt-Out" Procedure**

20     ( a ) Protective Order. Most, if not all, concerns pertaining to putative class
21 members' privacy will be resolved by a protective order, into which Plaintiff is
22 willing to enter. Reali Decl., ¶__, and attached **Exhibit 4**, Proposed Stipulation for
23 Protective Order. The Court in *Putman v. Eli Lilly and Co.*, 508 F.Supp.2d 812, a
24 wage and hour class action case, stated the issue and its resolution succinctly:

25          "... [T]he Court finds that plaintiff's needs here outweigh the concerns
26          of defendant. Plaintiff has shown a legitimate need for the requested
           information to determine, among other things, whether common
27

28

1
2
3
4
5

> questions of law or fact exist and if plaintiff's claims are typical. The need is especially compelling here where the information to be disclosed concerns not disinterested third parties, but rather potential plaintiffs themselves. This information must be disclosed to enable plaintiff to proceed; a protective order can strike the appropriate balance between the need for the information and the privacy concerns.

6  *Putman*, 508 F.Supp.2d 812, at 814 (emphasis added).

7      ( b ) "Opt-Out" Notice. Other courts have favored the use of an "opt-out"
8  notice, a procedure wherein a notice is sent to putative class members and they have
9  the opportunity to opt-out, in writing, from having their contact information
10  disseminated. *See Ngyuen v. Baxter Healthcare Corp.*, 275 F.R.D. at, 506-07
11  (discussing, with favor, the California Supreme Court's approval of pre-certification
12  discovery in *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 373,
13  in which case that Court reasoned the opt-out procedure  adequately protects the
14  privacy of class members); *see also Belaire-West Landscape v. Super. Ct.t*, 149
15  Cal.App.4th 554, 561 (opt-out notice approved to address privacy concerns in wage
16  and hour class action litigation); *Khalilipour v. Cellco P'ship*, 2010 WL 1267749
17  (N.D Cal. April 1, 2010) at *3 (unpub.) (discussion of privacy being outweighed by
18  the relevance of contact information in a consumer class action, citing to *Crab
19  Addison, Inc. v. Superior Court*, 169 Cal.App.4th 958, 968-69 (2008).

20      Plaintiff is willing to enter into a protective order, or in the alternative, agree
21  to an opt-out notice procedure.  A proposed Stipulation for Protective Order is
22  attached as **Exhibit 4**; and proposed Opt-Out Notices recently agreed to by the
23  parties in cases handled by The Markham Law Firm.[2] Reali Decl., ¶7.

24

25  [2] The Stipulated Protective Order is a more time-efficient method.  In the event the
26  Court orders that an opt-out procedure be utilized, additional time may be needed by
the parties past the May 31, 2013 class certification discovery cut-off set by the
27  Court, to allow adequate time for the procedure. Reali Decl., ¶8.

28

**( 4 )   Defendant's Objections as to Attorney-Client and/or Attorney Work Product Privilege; and that the Request is Overly Broad, Unduly Burdensome and Oppressive, Lack Merit.**

Defendant also objects that the information sought is protected by the attorney-client privilege and that the request is overly broad and burdensome.  There are no grounds for either objection.  Defendant has already produced the names of 144 out of the 395 putative class members, thus rendering moot the overly broad, burdensome and oppressive objection.  Nor is the contact information covered by the attorney-client or work product privileges.

**C.   The Payroll Records, Time Card Records (eTime), Work Schedules, Schedules of Client Meetings, and SONIC Records of Putative Class Members are Relevant to Class Certification (as well as to the Merits at Trial).  Objections of Burdensome and Overly Broad are Dispelled by a Proposed Sampling; and the Privacy of Class Members will be Protected by the Use of Employee Number or other Assigned Number.  Privacy of JCI Customers will be protected by Redaction of Identifying Information.**
Plaintiff has requested that Defendant produce the following records of putative class members, which she will use to evidence Defendant's wage and hour violations.  These include records of:  ( a ) payroll (**Exh. 2**, RPD-2, No. 30); (b ) time cards ("eTime records") (**Exh. 3**, RPD Nos. 39, 41), ( c ) work schedules, (d) "Ghant Chart" schedules of client meetings (**Exh. 2**, RPD-2, No. 28), and ( e ) SONIC records (**Exh. 2**, RPD-2 Nos. 18, 20, 22).

Defendant has previously produced, and/or is in the process of producing, all of these records as they pertain to Plaintiff Coleman.  Counsel for Defendant stated in an email of Wednesday, May 15, 2013 that SONIC records for Plaintiff Coleman would be available within 10 business days.  Reali Decl., ¶9.  Moreover, Jenny Craig FRCP 30(b)(6) witnesses have testified that the information is available.  **Exhibits 7, 8** (see below).  Defendant objects as to (1 ) relevancy; ( 2 ) privacy concerns; and ( 3 ) production would be burdensome and oppressive.

*Coleman et al. v. Jenny Craig, Inc.*, Case No. 11-cv-1301-MMA(DHB)
JOINT MOTION FOR
DETERMINATION OF DISCOVERY DISPUTE

1    **(1)   The Records Sought of Putative Class Members are Relevant**

2        The records sought of putative class members are relevant to class

3    certification.  Plaintiff will show that class members worked overtime, although their

4    time cards may show otherwise, by use of SONIC records that show the date <u>and</u>

5    <u>time</u> of an event or transaction, such as sales of food or an appointment.

6        Plaintiff testified that she was told by management to clock in and clock out at

7    the beginning and end of her shift, even though she worked before and after the

8    scheduled and reported time.  Exhibit 6, Coleman Depo, 72:12-20; 73:6-10, 19-23;

9    74:4-8; 117:11- 118:11; 118:21-25; 119:14-24; 144:7-19; 149:16-22; 176:2-13;

10   202:3-14.  The SONIC records will show when a class member worked overtime

11   hours, although their time card and work schedule showed otherwise.

12       JCI's own information technology witness testified that a query can be

13   phrased on SONIC to retrieve these financial and other transactions, by employee.

14   The information sought is on JCI's servers.  Further, the SONIC records and work

15   schedules of employees during the class period have not been purged. **Exhibit 7**,

16   Matson Depo., at pp. 2, 4-7, 15, 21-22, 28-29, 31-32 (SONIC records); pp. 7, 20

17   (Ghant records of customer appointments).

18       Likewise, JCI's payroll witness testified that a computerized time-card system

19   (eTime) is used by JCI employees to log-in and log-out at the beginning and end of

20   the shift, respectively, and also to log-out and log-in for lunch breaks.  Both eTime

21   and payroll records are retrievable. **Exhibit 8**, Deposition of Kim Mueller, taken

22   May 14, 2013 (rough transcript) ("Mueller Depo"), at pp. 2, 8, 11-12, 35-36, 48.[3]

23

24   [3] Ms Mueller also testified that the payroll system, while it calculates an extra hour of

25   premium pay for lunches that are missed, does not take account of short lunches.

     Mueller Depo, at p. 34-35.  Obtaining the payroll, work schedules, time cards and

26   Ghant records of putative class members will allow Plaintiff's consultant to assess

27   the  failure to pay premium lunch payments for short lunches. Reali Decl., ¶10.

     11

1    Defendant has agreed that it will produce the SONIC records, work schedules

2   and client schedules of Plaintiff Coleman.  Reali Decl., ¶9.  Defendant has already

3   produced Ms. Coleman's payroll and time card records.  Once Plaintiff receives the

4   SONIC records from Defendant, analysis will confirm that while she was paid for

5   some overtime and missed lunches, she was not paid for all the overtime worked.

6   As evidenced, these records are available for putative class members.

7    In order to prove wage and hour violations, in addition to anecdotal testimony

8   of Plaintiff and putative class members, Plaintiff will rely on Defendant's <u>own</u>

9   <u>records</u> to show the violations.  **This will be done by obtaining a sampling of the**

10  **395 putative class members' records, such that Plaintiff's consultant will cross**

11  **reference the work schedules, time cards, appointment schedules and SONIC**

12  **records of putative class members**.  Plaintiff needs this information to support her

13  class certification motion.  The information will show that common issues prevail

14  over individual issues, and the typicality of Plaintiff.  Reali Decl., ¶¶11, 12.

15          **( 2 )   Privacy Rights of Putative Class Members will be Protected by the**
            **Assignment of an Employee ID or other Newly Assigned Number**.
16

17    In order to resolve privacy concerns, Plaintiff proposes that a sampling of

18  records be produced.  The sampling of pertinent records will not disclose the

19  employees' identifying information, but instead can be presented with some other

20  identifying mark, such as employee ID number or other newly-assigned number.

21    Plaintiff needs the payroll information to cross-reference with other objective

22  data in the possession of Defendant, to support class certification and trial on the

23  merits.  Reali Decl., ¶11.

24          **( 3 )   Privacy of JCI Customers Will be Accomplished by Redaction**

25    To the extent that identifying characteristics of JCI customers cannot be

26  deleted electronically upon a query (which Plaintiff believes it can, based on

27

28

1   testimony of Mr. Matson, see **Exhibit 7** at p. 20), electronic records of appointments

2   class members had with customers can be redacted of identifying information of

3   class members the old-fashioned way.

4          **( 4 )   Complaints that the Request is Overly Broad, Ambiguous, and**

5                  **Burdensome are Resolved by the Production of the Requested**

               **Information Derived from a <u>Sampling</u> of the Putative Class**

6                  **Members' Records**.

7         In wage and hour class action litigation, it is normal practice that the parties

8   agree to a sampling of the information requested.  This is the compromise plaintiff

9   and defense lawyers have agreed to because of the large numbers of class members

10   involved, since the information relevant to class certification and merits is in the

11   exclusive possession of the Defendant.  Reali Decl., ¶13.

12         Here, Plaintiff has consulted with her expert, who stated (based upon a

13   putative class of 395 class members) that the payroll, time cards and work schedules

14   of 50 class members for about three months (or one annual quarter's worth) will

15   produce a relatively accurate analysis of the entire class, within approximately 2% -

16   3% accuracy.  Reali Decl., ¶14.

17         Further, JCI's own information technology witness testified that the SONIC

18   and appointment with customer schedules are available.  Kim Mueller, JCI's payroll

19   witness, testified on May 14, 2013 that payroll records are also available.   These

20   records as to Plaintiff Coleman have, or will be, produced.  Reali Decl., ¶9.  These

21   will be analyzed for further evidence of California law and FLSA violations.

22   **D .   Message Board Records Show Complaints of Wage and Hour Violations**

     **thus Are Relevant; Are Retrievable thus Production is Not Burdensome**

23        **and Oppressive; and Privacy is Ensured as Posts are Anonymous**.

24         Plaintiff requests in-house message board, or discussion board, documents.

25   (**Exh. 2**, RPD-2, Nos. 15, 16)  The discussion board is an electronic bulletin board

26   system used that  allows <u>all</u> JCI employees to communicate ideas, concerns, tips and

27   potentially complaints.  There is no censorship or restrictions on the content or

                            13

28

subject matter posted.  It can be searched on an employee-by employee basis (although it is supposed to be anonymous) and string searches, for instance for the word "overtime,"  **Exhibit 7**, Matson Depo., at pp. 26-30. Defendant objects only, as to; ( 1 ) relevance; ( 2 ) privacy concerns; and ( 3 ) the request of burdensome and oppressive.. These objections do not preclude Plaintiff obtaining the records requested, especially in light of the sampling method proposed by Plaintiff.

### ( 1 )  Message Board Messages are Relevant

Plaintiff Coleman testified that she has seen complaints on the Message Board system that JCI employees come in early and leave late at every center, and have to cover for lunches, and do not get paid for it. **Exhibit 6,** Deposition of Nashonna Coleman taken January 15, 2013, at 224:2-12; 225:3-4, 17-21, 25;  226:1-18; 227:10-24; 228:20-25.  To the extent other JCI employees complain of unpaid overtime work, missed and late lunches and missed rest breaks on the Message Board, this information is highly relevant to class certification, showing that Defendant's violations are common issues that prevail over individual issues.

### ( 2 )  Messages can be Obtained from Data on JCI Servers, and can Accommodate Limited Search Queries.

As stated above, all employees have access to the Message Board system. Limited queries can be done on the message board. **Exhibit 7**. Defendant can run a query to determine content of messages pointing to unpaid overtime, missed or late lunches and missed rest breaks  for which no premium payment is made.

### ( 3 ) Privacy is Protected Because Posts are Anonymous.

Privacy of JCI employees is protected because posts are set up to be anonymous, should the employee want them to be. **Exhibit 7**.  To the extent pertinent posts arguably contain other private information (which Plaintiff does not agree with as the posts are public, at least JCI internally), this can be redacted.

## V.   DEFENDANT'S POSITION

### A.   Introduction and Summary

Plaintiff claims to need the requested discovery to determine "whether common questions of law or fact exist and if Plaintiff's claims are typical." Plaintiff, however, does not identify those "questions" or "claims" with any specificity or particularity. Indeed, a review of Plaintiff's position shows that Plaintiff is not seeking to <u>corroborate</u> commonality or typicality. Instead, Plaintiff's attorneys are fishing to <u>find</u> a viable claim and class representative. That is not the purpose of discovery.

Plaintiff's discovery requests are vague, ambiguous, overbroad, unduly burdensome and seek information that is not relevant or likely to lead to the discovery of admissible evidence. In addition, Plaintiff's request for class-wide discovery is premature, and the rationale for compelling production of such excessive and burdensome discovery is flawed. Moreover, Plaintiff's effort to obtain additional, unnecessary information to certify this type of "off-the-clock," overtime, and missed break case is futile, as class certification is not possible.

In this case, Defendant has produced all of Plaintiff's time records and pay data (including records showing overtime pay), the entirety of Plaintiff's personnel file, Defendant's employee handbooks, Defendant's operations manuals, and proof of Plaintiff's monthly agreement and acknowledgment for a 12-month period that Plaintiff received payment for all hours worked. *See* Declaration of R. Dale Dixon, Jr. ("Dixon Decl.") ¶2.

After receiving discovery responses from Defendant and becoming abundantly aware that the facts in this case weigh heavy against Plaintiff, Plaintiff's attorneys now seek to troll the ocean floors in an effort to find a replacement plaintiff.

### B.   Federal Law Limits Discovery in Putative Class Actions.

*Coleman et al. v. Jenny Craig, Inc.*, Case No. 11-cv-1301-MMA(DHB)
JOINT MOTION FOR
DETERMINATION OF DISCOVERY DISPUTE

1    Unlike California law (*e.g.,* Code of Civ. Proc. § 2017.010), which often

2  permits Plaintiffs to discover the names and contact information of putative class

3  members (*e.g., Pioneer Electronics (USA), Inc. v. Super. Ct.*, 40 Cal.4th 360, 373

4  (2007)), federal law does not provide the same liberal discovery.  Despite the general

5  breadth of FRCP 26(b)(1), federal class action discovery is conducted in a controlled

6  manner by the court.  *See, e.g.,* FRCP 23, Advisory Committee's 2003 Note ("[I]t is

7  appropriate to conduct controlled discovery into the 'merits,' limited to those aspects

8  relevant to making the certification decision on an informed basis.").  But there are

9  limits to what a party may properly seek in discovery.  *See Rivera v. NIBCO*, 364

10  F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of

11  discovery to engage in 'fishing expeditions.'"); *see also Morlan v. Universal*

12  *Guaranty Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002) ("until certification there is

13  no class action but merely the prospect of one; the only action is the suit by the

14  named plaintiffs"); *see also Shushan v. Univ. of Colorado at Boulder*, 132 F.R.D.

15  263, 268 (D. Colo. 1990) (explaining that a plaintiff cannot simply "file a complaint,

16  claiming to represent a class whose preliminary scope is defined by him, and by that

17  act alone obtain a court order which...requires discovery concerning members of that

18  class."); *see also Stewart v. Winter,* 669 F.2d 328, 332 (5th Cir. 1982) (observing

19  that allowing broad merits discovery before certification would "impose[] on

20  defendants one of the major burdens of defending [an] omnibus class action prior to

21  any determination that the action [is] maintainable as such.").

22    Here, Plaintiff has not articulated a valid reason for the broad discovery she

23  seeks, and it is clear that Plaintiff's attorneys are simply searching for a cause of

24  action and a replacement plaintiff.  Moreover, as explained herein, the law regarding

25  this type of missed meal break, overtime and "off-the-clock" case clearly prohibits

26  class certification of the allegations pled by Plaintiff because the cases require

27

28
*Coleman et al. v. Jenny Craig, Inc.*, Case No. 11-cv-1301-MMA(DHB)
JOINT MOTION FOR
DETERMINATION OF DISCOVERY DISPUTE

1   individualized inquiries into the facts as they apply to each potential claimant.

2       **C.    The Facts Do Not Support Plaintiff's Claims.**

3       Plaintiff's motion reiterates her complaint, alleging that Plaintiff and the

4   putative class members were "unable to take lunches," "unable to take rest breaks,"

5   and "worked overtime hours without being paid for their work." Plaintiff's

6   complaint states clearly that the alleged violations were the result of Defendant's

7   corporate policies and procedures. *See* First Amended Complaint ("FAC"), ¶¶26,

8   32-35, 44, 50, 59-63, and 70-72. Plaintiff's case hinges on Defendant's corporate

9   policies, and it is misleading and disingenuous for Plaintiff to assert now that

10  individual class member experiences are relevant, much less vital to the successful

11  prosecution of Plaintiff's case. Those allegations are simply unsupported by the

12  evidence provided to Plaintiff.

13      For example, Plaintiff's time detail records, which were produced by

14  Defendant on March 27, 2013, and used by Plaintiff in depositions of Jenny Craig

15  employees on May 14, 2013, show clearly that Plaintiff clocked out for many

16  lunches during her tenure with Defendant. Dixon Decl. ¶3, <u>Ex. A</u>. Because

17  Plaintiff's claim of missed lunches is itself inconsistent, any question of other

18  employees' missed lunches would require a similar individualized inquiry into when,

19  how, and why lunches were missed, if they were missed at all. Missed rest breaks

20  require the same individualized inquiry on an employee-by-employee basis as to

21  how, why, and when such rest breaks were not taken, if they were not taken. This is

22  the very reason why the courts have found this type of case is not class certifiable.

23      In addition, Plaintiff's payroll and earnings history records, which were

24  produced by Defendant on April 19, 2013, and used by Plaintiff in depositions of

25  Jenny Craig employees on May 14, 2013, show clearly that Plaintiff was paid

26  overtime throughout her employment with Defendant. Dixon Decl. ¶4, <u>Ex. B</u>.

27

28

Accordingly, Plaintiff cannot maintain her claim that she or anyone else was denied overtime pay because of a company policy against payment of overtime. Any dispute regarding overtime would require an individualized, employee-by-employee inquiry into the circumstances regarding a lack of overtime pay, if any.

Because Plaintiff's claims cannot survive, Plaintiff's attorneys are now hoping to use overly broad and unnecessary discovery to find a viable claim and/or a viable replacement plaintiff.

### D.   The Requested Discovery Is Irrelevant Because Plaintiff's Claims Cannot Receive Class Certification.

Plaintiff's attempt to obtain the requested data and information will not aid Plaintiff in her class certification motion or the court in its analysis of such motion. Plaintiff's reliance on *Maes v. JP Morgan Chase* is misplaced. Unlike the instant action, which centers on the availability of breaks and payment of wages, *Maes* concerned issues of the employer's misclassifying employees as salaried to avoid paying overtime and other non-exempt employee benefits.

The Court should follow a case directly on point: *Flores v. CVS Pharmacy, Inc., et al.*, No. 2:07-cv-05326-JHN-Ex. The plaintiff in *Flores* sought discovery of the names and addresses of all hourly employees at all Albertsons grocery stores and Sav-On drug stores in California for a particular limitations period. Defendants opposed the requests on the basis that meal and rest break claims are inherently unsuited for class treatment, because the law requires only that employers make meal and rest breaks available, not force employees to take them, thus any inquiry into alleged missed breaks must rest on individual questions of why a break was missed. The magistrate judge agreed, and was affirmed by the district court. *Id.*, slip op. (C.D. Cal. Mar. 23, 2010). In affirming the denial of discovery, the district court stated, "the district courts…have consistently held that a showing that employer

18

*Coleman et al. v. Jenny Craig, Inc.*, Case No. 11-cv-1301-MMA(DHB)
JOINT MOTION FOR
DETERMINATION OF DISCOVERY DISPUTE

1
2
3
4
5
6
7
8
9

policies deprived plaintiffs of breaks requires 'substantial individualized fact finding.'" *Id.*, slip op. at 14; *see also Forrand v. Federal Express Corp.*, No. 2:08-cv-1360 DSF (PJWx) slip op. (C.D. Cal. Apr. 25, 2013) (denying class certification for case involving "off-the-clock" work, missed meal breaks, and unpaid wages on the grounds that particularized and individualized testimony is required to establish liability because individual issues of proof predominate); *see also Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 508 (C.D. Cal. 2011) (refusing to allow discovery of contact information for defendant company's locations outside the locations where plaintiff worked).[4]

10
11
12
13
14
15
16
17

    In the instant case, no amount of discovery of putative class member information "is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). In particular, Plaintiff has demonstrated nothing to support its bald statement that the requested information will help demonstrate commonality and typicality. In fact, Plaintiff's complaint states clearly that the alleged violations were the result of Defendant's corporate policies and procedures. FAC, ¶¶26, 32-35, 44, 50, 59-63, and 70-72. Plaintiff's

18
19
20
21
22
23
24
25
26
27

[4] *See also Washington v. Joe's Crab Shack*, No. C 08-5551 PJH, 2010 WL 5396041, slip op. at 1 (N.D. Cal Dec. 23, 2010). The court explained that "[p]laintiff's position is that common questions predominate because the main issue is whether – notwithstanding Crab Addison's written policies – Joe's Crab Shack restaurants in California followed a common unwritten policy of denying meal and rest breaks, failing to pay employees who did not take breaks, failing to pay for overtime…and so forth." *Id.* at 11. The court found that plaintiff's arguments regarding missed meal breaks, off-the-clock work, and overtime necessarily focus on individualized inquiries, stating that "the fact that the information relating to individual employees may be available (or capable of being extracted) from Crab Addison's Aloha system and other computerized systems does not mean that these are issues that are not [dependent] on an individualized inquiry." *Id.* at 17. The court found, as the Court must find in this case, that the "only way of showing the 'practice' that plaintiff claims existed at the California restaurants would be to determine how when and how [sic] it was applied in each instance." *Id.* The "crucial issue with regard to the meal break claim is the reason that a particular employee may have failed to take a meal break." *Id.* at 18. The court summed up its decision by stating, "[i]n this case, the court finds that class certification is not warranted because plaintiff has not met his burden of showing that the questions of law and fact common to class members predominate over questions affecting only individual members, or of showing that a class action would be a superior method of resolving these claims." *Id.* at 21.

28

motion highlights the facts that (i) individual issues of proof predominate and (ii) any claimed violation would necessitate at least a store-by-store and manager-by-manager inquiry.

Plaintiff has requested and was provided with Defendant's policies and procedures regarding the alleged violations. Now, unhappy with the state of their case, Plaintiff's attorneys attempt to circumvent their pleading and redefine the allegations as requiring individual employee substantiation. That argument contradicts Plaintiff's complaint and demonstrates that Plaintiff's action is not suited for class certification because individual inquiries are necessary for adjudication of the claims.

Because the wage and hour claims asserted by Plaintiff inherently require an individual inquiry, no number of potential class members will assist the Plaintiff in her class certification motion. The futility of Plaintiff's endeavor is clear, and the Court should not permit Plaintiff to impose burdensome and oppressive discovery obligations on Defendant to pursue a matter that cannot be certified as a class action. Defendant should not be required to pursue expensive electronic retrieval or invest additional time and money to creating individual reports for all non-exempt employees. Unlike class actions involving consumers who do not know they have been damaged, the putative class members in this case know the circumstances under which they worked, and those individuals have not come forward to bring claims in the two years since this case was filed.

## E.    The Court Should Not Compel Production of Contact Information of Putative Class Members.

Plaintiff's request for identification of and contact information for all putative class members seeks identification of all Jenny Craig employees. As explained above, the requested discovery is irrelevant because Plaintiff's case requires

*Coleman et al. v. Jenny Craig, Inc.*, Case No. 11-cv-1301-MMA(DHB)
JOINT MOTION FOR
DETERMINATION OF DISCOVERY DISPUTE

particularized and individualized testimony to establish liability, individual questions and claims predominate, and thus, the case cannot be certified as a class action. Moreover, Plaintiff's motion contradicts Plaintiff's stated motives for obtaining contact information for the putative class members. On the one hand, Plaintiff states that her "testimony of what she has heard from other employees about their experiences being the same as hers, is (arguendo) not admissible evidence" and consequently she "needs to obtain the evidence directly from the class members." On the other hand, with those very words, Plaintiff admits to having knowledge of employees to support her allegations. Yet for almost two years, Plaintiff has either not pursued declarations from those individuals or has failed to obtain their cooperation and corroboration. In addition, Plaintiff produced an exhibit during depositions of Jenny Craig employees on May 14, 2013, showing clearly that Plaintiff has the names of multiple employees who worked in a Jenny Craig location where Plaintiff worked. Dixon Decl. ¶5, Ex. 3. Again, Plaintiff has had access to those employees but presumably has done nothing to obtain declarations from those individuals (or has not received responses that assist her case). It is not Defendant's duty to provide Plaintiff's attorneys with a valid claim and viable plaintiff for their case.

Plaintiff's motion exemplifies further the fact that Plaintiff's case is not amenable to class certification and requires individualized inquiry. For example, Plaintiff states that *she* was told by *some* member of management to clock out and continue working because there was too much overtime, but that inquiry requires an employee-by-employee, store-by-store, and manager-by-manager inquiry. Specifically, on the off-the-clock overtime issue, Plaintiff's allegations would require an inquiry into: (1) whether and why a particular employee elected to clock out and continue working; (2) how much overtime was too much overtime for a particular

employee or specific store; (3) who gave such instructions; (4) what specific instructions were given; and (5) whether an employee elected to clock out and make a sale to artificially increase their per-hour productivity for commission purposes.[5] Furthermore, the "two-person-in-store" rule requires an individualized analysis to determine: (1) whether a particular store is small enough to be affected by that rule; (2) whether those stores closed for lunches; and (3) whether each and every employee in such a store received premium pay for not taking a meal break; and (4) for those allegations concerning meal breaks of less than 30 minutes, what individual reasons led the employee to take less than 30 minutes for lunch. Plaintiff's own narrowing of her claims and class to those people potentially affected by the "two-person-in-store" rule demonstrates why Plaintiff's request for company-wide discovery concerning all stores and all employees is overly broad and unjustified.

### F.   The Court Should Not Compel Production of the Other Requested Information and Documents.

Because Plaintiff's claims are not amenable to class certification, all of Plaintiff's requests for class-wide discovery should be denied. Payroll records, work schedules and SONIC sales records shed light only on individual employees in single Jenny Craig stores. Those records are further evidence that Plaintiff's claims cannot be certified for class treatment because individual issues of proof predominate. Because Plaintiff has not identified specific instances where even she worked off the clock, it is premature for Plaintiff to request class-wide discovery of SONIC sales records and e-time records. Plaintiff's sweeping and unsupported claim that analysis

---

[5] Employees receive bonuses and commissions based on their dollars sold per hour. An employee could elect, in violation of company policy and to skew their hourly productivity, to clock out and forego their hourly compensation because the increased bonus compensation for an artificially high hour exceeds their hourly wage, including overtime. Indeed, if someone worked off the clock to earn a higher bonus, for purposes of calculating damages, that employee's commission would have to be recalculated to take back the artificially inflated bonus compensation. This is further proof that Plaintiff's claims require individual analysis that is not suitable for class treatment.

22

*Coleman et al. v. Jenny Craig, Inc.*, Case No. 11-cv-1301-MMA(DHB)
JOINT MOTION FOR
DETERMINATION OF DISCOVERY DISPUTE