UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NASHONNA COLEMAN, an individual, TERESA SAMANIEGO, an individual, and GAIL CHILLINSKY, an individual, on behalf of themselves and all persons similarly situated,

Plaintiffs,

v.

JENNY CRAIG, INC.,

Defendant.

Civil No.    11-cv-1301-MMA (DHB)

**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**

**[ECF No. 36]**

On May 16, 2013, the parties filed a Joint Motion for Determination of Discovery Dispute. (ECF No. 36.)  On that same day, Plaintiff filed a notice of errata indicating that the last two pages of ECF No. 36 were missing, and attaching a complete version of the parties' joint motion. (ECF No. 37.)  After a thorough review of the parties' arguments and evidence, the Court issues the following Order to resolve the issues in dispute.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff Nashonna Coleman brings this putative collective and class action against Defendant Jenny Craig, Inc. for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and California state wage and hour laws.[1]

_____

[1] The operative First Amended Complaint was also brought by Plaintiffs Teresa Samaniego and Gail Chillinsky.  (ECF No. 4.)  However, on May 15, 2012, the district judge granted Defendant's motion to compel arbitration of Plaintiffs Samaniego and

Specifically, Plaintiff alleges that Defendant: (1) failed to pay regular and overtime compensation in violation of the FLSA; (2) failed to pay wages owed in violation of California Labor Code §§ 201, 203, 216, 218.5 and 227.3; (3) failed to pay overtime compensation in violation of California Labor Code §§ 510, 1194 and 1198; (4) failed to timely pay wages upon termination in violation of California Labor Code §§ 201, 202 and 203; (5) failed to provide meal and rest breaks in violation of California Labor Code §§ 226.7 and 512; (6) engaged in unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.*; and (7) is subject to penalties pursuant to California Labor Code § 2699, *et seq.*

The First Amended Complaint alleges:

> Plaintiffs were not paid for all time worked.  Plaintiffs routinely worked before and after their shifts ended, without being paid for their time.  They were not permitted to clock in until just a few minutes before their shifts began, even though they were required to arrive earlier in order to get the store ready to open, and were often required to continue to work after clocking out at the end of their shifts.

(ECF No. 4 at ¶ 19.)  Plaintiff further alleges that "[i]n addition to working off the clock before and after their shifts, Plaintiffs often worked without taking meal or rest periods." (*Id.* at ¶ 20.)

Plaintiff alleges that "Defendant's uniform policy and procedure requires its employees to work 'off the clock' without compensation for time spent working for Defendant and/or subject to the control of the Defendant." (*Id.* at ¶ 32.)  Plaintiff further alleges:

> Defendant, as a matter of established company policy and procedure in the State of California, administers a uniform company policy and practice regarding the duties and responsibilities of the Plaintiffs and other members of the Class and creates and/or maintains various materials, such as policy handbooks, letters, and other correspondence which, taken together, constitute a written contract for employment for Plaintiffs and the Class members.

(*Id.* at ¶ 33.)  Plaintiff alleges that "Defendant, as a matter of established company policy and procedure, in the State of California, scheduled to work and/or required, suffered or

Chillinsky's claims.  (ECF No. 22.)

1 permitted Plaintiffs and other members of the Class to work, without paying them for
2 each and every hour worked during the Class Period." (*Id.* at ¶ 34.)

3 ## II. DISCOVERY DISPUTE

4     The instant discovery dispute concerns whether Defendant should be required to
5 produce to Plaintiff, prior to class certification, "(1) the contact information of putative
6 class members; (2) other records pertaining to class members, to include: payroll records,
7 work schedules, time cards, as well as other computerized records that show the date and
8 time of various transactions; and (3) 'Message Board' records (an internal discussion
9 board for [Defendant's] employees)." (ECF No. 37-1 at 4:11-16.)[2]

10     First, Plaintiff seeks production of the full name, address and telephone number of
11 all 395 putative class members, but Defendant has provided only the last names of 144
12 of the 395 class members. (*Id.* at 5:1-4.) Plaintiff contends that pre-certification
13 discovery of the contact information of putative class members is "routinely allowed" in
14 wage and hour actions (*id.* at 7:16-17), and that the information is relevant in that
15 Plaintiff needs the information to establish whether common questions of law or fact exist
16 and if Plaintiff's claims are typical of those of the putative class members. (*Id.* at 8:1-21.)
17 Plaintiff further contends that the relevancy of this information outweighs the class
18 members' privacy concerns which can be adequately protected through the use of either
19 a protective order or an "opt-out" procedure. (*Id.* at 9:18-10:27.)

20     Second, Plaintiff seeks production of Defendant's records of putative class
21 members including payroll records, time cards, work schedules, schedules of client
22 meetings (known as "Ghant charts") and "SONIC" records.[3] (*Id.* at 11:14-19.) Plaintiff
23 contends these records are relevant to "show that class members worked overtime,

24

25     [2] Page numbers for docketed materials cited in this Order refer to those imprinted
26 by the Court's electronic case filing system.

27     [3] The parties define "SONIC" records as follows: "SONIC is a customer
relationship management system that tracks and stores all interactions with customers
from enrollment through appointments through purchasing food and accessories . . .
28 which system keeps track of purchases and other transactions by date and time [of]
transaction. (ECF No. 37-1 at 5:10-14.)

although their time cards may show otherwise, by use of SONIC records that show the date and time of an event or transaction, such as sales of food or an appointment." (*Id.* at 12:3-5.) Plaintiff further contends that the privacy of putative class members can be protected through the use of employee ID numbers or unique identifiers, and that the privacy of Defendant's customers can be protected through appropriate redactions. (*Id.* at 13:17-14:3.) Finally, Plaintiff contends that she only needs the payroll, time cards and work schedules of 50 of the 395 putative class members in order to provide an accurate analysis of the entire class, and that the use of such sampling resolves any concern that production of the records might be unduly burdensome. (*Id.* at 14:7-21.)

Third, Plaintiff seeks production of Defendant's internal "Message Board" records, an internal electronic bulletin board system to which all Defendant's employees have access to post comments or concerns. (*Id.* at 14:25-27.) Plaintiff claims that the records are relevant because she has seen posted complaints that employees were required to work without receiving proper wages at each of Defendant's centers, and this evidence will support Plaintiff's Rule 23 commonality argument. (*Id.* at 15:7-15.) Plaintiff also contends the "Message Board" database can be easily searched for key words suggesting unpaid overtime, missed or late lunches and rest breaks, and that privacy concerns would be protected because the posts are anonymous and, to the extent they contain personal information, they can be redacted. (*Id.* at 15:16-26.)

Defendant's primary argument is that the requested discovery should not be compelled because class certification of Plaintiff's overtime and "off the clock" claims is prohibited by applicable law because such claims "require individualized inquiries into the facts as they apply to each potential claimant." (*Id.* at 17:26-18:1.) Defendant further argues that Plaintiff's First Amended Complaint alleges that Defendant's violations were the result of its corporate policies and procedures, and that "it is misleading and disingenuous for Plaintiff to assert now that individual class member experiences are relevant, much less vital to the successful prosecution of Plaintiff's case." (*Id.* at 18:9-11.) Defendant also argues that rather than seeking the discovery to corroborate

1   commonality and typicality, "Plaintiff's attorneys are fishing to <u>find</u> a viable claim and

2   class representative." (*Id.* at 16:7-8.) Defendant also generally argues that the "discovery

3   requests are vague, ambiguous, overbroad, unduly burdensome and seek information that

4   is not relevant or likely to lead to the discovery of admissible evidence." (*Id.* at 16:10-

5   12.)

## III.  DISCUSSION

**A.**   <u>**Legal Standards**</u>

       **1.**   **Scope of Discovery**

Litigants "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1).  In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  The relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507.  Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

       **2.**   **Class Actions**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, a member of a class of individuals may sue on behalf of all class members only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

1   FED. R. CIV. P. 23(a).[4]

2       In addition to the requirements of Rule 23(a), maintenance of a class action also

3   requires satisfaction of one of the three prongs of Rule 23(b).

4       Under Rule 23(b), a case may be certified as a class action only if (1) there
    is a risk of substantial prejudice from separate actions; or (2) declaratory or
5   injunctive relief benefitting the class as a whole would be appropriate; or (3)
    "the questions of law and fact common to class members predominate over
6   any questions affecting only individual members, and . . . a class action is
    superior to other available methods for fairly and efficiently adjudicating the
7   controversy."

8   *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 638 (N.D. Cal. 2010) (quoting FED. R.

9   CIV. P. 23(b)).

10       The Ninth Circuit has addressed the propriety of pre-certification discovery in class

11   action cases on numerous occasions.  In *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205 (9th

12   Cir. 1975), the Ninth Circuit recognized that "[w]hether or not discovery will be

13

14       [4] "The numerosity requirement requires examination of the specific facts of each
    case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*,
15   446 U.S. 318, 330 (1980).  Plaintiffs are not required to identify the precise number of
    class members.  Rather, "[t]he central question is whether Plaintiffs have sufficiently
16   identified and demonstrated the existence of the numbers of persons for whom they
    speak." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 680-81 (S.D. Cal. 1999).
17

18       "Commonality requires the plaintiff to demonstrate that the class members 'have
    suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541,
19   2551 (2011) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157
    (1982)).  "Rule 23(a)(2) is permissive, and '[a]ll questions of fact and law need not be
20   common to satisfy the rule.'" *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 636
    (N.D. Cal. 2010) (quoting *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 599 (9th Cir.
21   2010)).  Plaintiffs' "claims must depend upon a common contention. . . . That common
    contention, moreover, must be of such a nature that it is capable of classwide
22   resolution--which means that determination of its truth or falsity will resolve an issue that
    is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 131
23   S. Ct. at 2551.

24       "Representative claims are 'typical' if they are reasonably co-extensive with those
    of absent class members; they need not be substantially identical." *Hanlon v. Chrysler
25   Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "Some degree of individuality is to be
    expected in all cases, but that specificity does not necessarily defeat typicality." *Dukes*,
26   509 F.3d at 1184 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

27       "Adequate representation 'depends on the qualifications of counsel for the
    representatives, an absence of antagonism, a sharing of interests between representatives
28   and absentees, and the unlikelihood that the suit is collusive.'" *Crawford v. Honig*, 37
    F.3d 485, 487 (9th Cir. 1994) (quoting *Brown v. Ticor Title Ins. Corp.*, 982 F.2d 386, 390
    (9th Cir. 1992)).

permitted in a case of this nature lies within the sound discretion of the trial court." *Id.* at 209 (citing *Berland v. Mack*, 48 F.R.D. 121, 126 (S.D.N.Y. 1969)); *see also Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) ("Prior to class certification under Rule 23, discovery lies entirely within the discretion of the Court.") (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). "In determining whether to grant discovery the court must consider its need, the time required, and the probability of discovery resolving any factual issue necessary for the determination" of whether a class action is maintainable. *Kamm*, 509 F.2d at 210. *Kamm* further states:

> The propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses. To deny discovery in a case of that nature would be an abuse of discretion. Where the necessary factual issues may be resolved without discovery, it is not required.

*Id.*; *see also Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1312 (9th Cir. 1977) ("It is clear that under some circumstances the failure to grant discovery before denying class treatment is reversible error.").

In *Doninger*, the Ninth Circuit further addressed whether courts should allow pre-certification discovery:

> It is true that the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant.

564 F.2d at 1313 (citations omitted). However, "where the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites [*i.e.*, numerosity, commonality, typicality and adequacy of representation], . . . the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations." *Id.* (citing *Hatfield v. Williams*, 64 F.R.D. 71, 75 (N.D. Iowa 1974)); *see also Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a

1   prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied

2   or that discovery is likely to produce substantiation of the class allegations.  Absent such

3   a showing, a trial court's refusal to allow class discovery is not an abuse of discretion.").[5]

4        Finally, reviewing *Kamm*, *Doninger* and *Mantolete*, the Ninth Circuit concluded:

5   "Our cases stand for the unremarkable proposition that often the pleadings alone will not

6   resolve the question of class certification and that some discovery will be warranted."

7   *Vinole*, 571 F.3d at 942.

8   **B.   Analysis**

9        Although the *Mantolete* standard is typically addressed at the outset of a case in

10  determining whether *any* discovery is appropriate, here, discovery has been open since

11  March 2012.  (ECF Nos. 10, 17.)  The Court issued an order on March 29, 2012 setting

12  an April 8, 2013 deadline to complete discovery.  (ECF No. 17 at ¶ 7.)  Defendant did not

13  object to the Court's allowance of discovery at that time, nor did Defendant assert that

14  Plaintiff should be required to meet the discretionary burden established by *Mantolete*.

15  On October 24, 2012, the Court replaced the discovery cutoff with a cutoff to complete

16  discovery specifically related to class certification.  (ECF No. 26 at ¶ 3.)  At the parties'

17  request, the Court subsequently extended the class certification discovery cutoff to May

18  31, 2013.  (ECF No. 31 at ¶ 2.)  Although Defendant arguably waived any argument that

19  no discovery is warranted, the Court will nevertheless address Defendant's objections to

20  Plaintiff's specific discovery requests following a brief analysis of the *Mantolete*

21  standard.

22        **1.   Plaintiff's *Mantolete* Burden**

23        Initially, the Court concludes that Plaintiff has demonstrated a prima facie showing

24  under Rule 23(a).  With respect to numerosity, it is uncontested that there are 395

25

26        [5] *Mantolete* and *Doninger* do not "suggest[] that a prima facie showing is
27  mandatory in all cases, and it very well may be the case that courts routinely do not
    require such a showing.  However, it is clear that a court has discretion to decide whether
28  to require the prima facie showing . . . before allowing discovery."  *Kaminske v. JP
    Morgan Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), 2010 U.S. Dist. LEXIS
    141514, at *5 (C.D. Cal. May 21, 2010).

putative class members. (ECF No. 37-1 at 5:1-4.) With respect to commonality, Plaintiff alleges shared common questions of law and fact in that "Defendant, as a matter of established company policy and procedure, in the State of California, scheduled to work and/or required, suffered or permitted Plaintiffs and other members of the Class to work, without paying them for each and every hour worked during the Class Period." (ECF No. 4 at ¶ 34.) Such allegations are sufficient to meet the prima facie requirement of commonality. *See Washington*, 271 F.R.D. at 636 ("Plaintiff's claims, as pled, share a common question of law – whether any of the practices [defendant] is alleged to have engaged in constitute violations of California law – and at least some of the facts to be analyzed with respect to this question are the same."). With respect to typicality, Plaintiff "asserts injuries similar to class members, and the evidence suggests other class members have been similarly injured." *Soto v. Castlerock Farming & Transport, Inc.*, 282 F.R.D. 492, 502 (E.D. Cal. 2012). Finally, with respect to adequacy, the Court believes that a sufficient showing has been made. Accordingly, the Court finds that discovery is appropriate based on Plaintiff's prima facie showing of Rule 23(a)'s prerequisites.[6] *See Mantolete*, 767 F.2d at 1424. Moreover, even if Plaintiff could not make such a showing at this stage, the below discussion makes it clear that at least some of the requested "discovery is likely to produce substantiation of the class allegations." *Id.*

### 2. Defendant's Objections

#### a. Alleged Futility of Class Certification

Defendant's primary argument is that the requested discovery should not be allowed because class certification is inherently improper in wage and hour cases due to the individualized nature of the class members' claims. In citing to several cases where class certification was denied in wage and hour actions, Defendant essentially argues for a blanket rule that no pre-certification discovery should be allowed in wage and hour

---

[6] "The Court is not making findings related to class certification, but evaluates the certification factors at this time *only* for a determination of whether prima facie evidence has been shown." *Soto v. Castlerock Farming & Transport, Inc.*, 282 F.R.D. 492, 500 n.6 (E.D. Cal. 2012).

putative class actions.   However, not only did Defendant not object earlier in this litigation when the Court permitted pre-certification discovery, but Defendant's argument for a blanket rule of this nature has been considered and rejected.

In *Kaminske*, the district judge reversed the magistrate judge's denial of pre-certification discovery upon concluding "that the magistrate judge's denial of discovery relevant to class certification based upon the application of a blanket rule barring the possibility of class certification in cases involving loan officer wage and hour claims for a lack of predominant factual issues was contrary to law." 2010 U.S. LEXIS 141514, at *15-16.   Although the court recognized other wage and hour cases in which class certification had been denied, the *Kaminske* court found that in that case the plaintiff had "not been given an opportunity to conduct discovery to support her position that common issues predominate.  She should not be barred from conducting such discovery because a plaintiff in a different case squandered an opportunity to do so." *Id.* at *13.  The court further stated:

> The cases relied upon by the magistrate judge do not set out a blanket rule prohibiting class certification in this case, but only suggest that obtaining class certification may be very difficult.   These cases are not an insurmountable barrier that precludes Plaintiff from making a prima facie showing that the requirements of Rule 23(b)[7] are satisfied.  Simply because other plaintiffs making similar allegations with respect to similar types of employees have been unsuccessful at the class certification stage in the recent past does not mean that the Plaintiff in this case should be deprived of an opportunity to conduct discovery relevant to the class certification issue. Plaintiff should not suffer for the failures of other litigants.

*Id.* at * 13-14.  The court also found that the magistrate judge improperly "went beyond a consideration of a prima facie showing and into a consideration of Plaintiff's likelihood of success at the class certification stage." *Id.* at * 9.  The Ninth Circuit's *Vinole* decision

---

[7] In *Kaminske*, the magistrate judge had denied discovery after concluding that the plaintiff could not make a prima facie showing satisfying one of the Rule 23(b) requirements. 2010 U.S. Dist. LEXIS 141514, at *6 n.1.  The court found that because *Mantolete* does not distinguish between Rule 23(a) and Rule 23(b), "the magistrate judge did not err by requiring that Plaintiff to make a prima facie showing with respect to Rule 23(b)." *Id.*  Here, however, the Court finds that only a prima facie showing of the Rule 23(a) requirements is necessary. *See Doninger*, 564 F.2d at 1313 (addressing plaintiff's failure to make "a prima facie showing of Rule 23(a)'s prerequisites").

"did not establish a rule against class certification of wage and hour cases as a matter of law, but simply affirmed a denial of certification on the basis of the evidentiary record before the district court.  Indeed, the Vinole court explicitly noted that the district court 'did not suggest that the lack of a common policy necessarily defeats certification as a matter of law.'" *Id.* at * 10-11 (citing *Vinole*, 571 F.3d at 947).

The Court agrees with the reasoning in *Kaminske* rejecting the assertion that wage and hour class actions can never be maintained due to the predominance of individualized inquiries.  Indeed, in *Washington*, a case cited by Defendant, the court recognized that "[i]t is true that courts . . . often find wage-and-hour cases to be appropriate for class treatment."  271 F.R.D. at 642.  Moreover, the Court notes that several of the cases relied upon by Defendant involve the denial of class certification *after* the plaintiff had been afforded an opportunity to engage in discovery.  *See, e.g.*, *id.* at 633 (noting that plaintiff had obtained a 20% sampling of defendant's payroll and meal and rest break records).  As the *Kaminske* court recognized, it would be "particularly unfair" to prohibit discovery based upon such cases "given that the plaintiffs in those cases were given the opportunity to conduct discovery with respect to class certification issues before the district court considered certification."  2010 U.S. Dist. LEXIS 141514, at *14 n.3 (citing *Vinole*, 571 F.3d at 942; *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 268 F.R.D. 604, 612 n.2 (N.D. Cal. 2010)); *see also Artis*, 276 F.R.D. at 352 (rejecting argument that discovery should be denied because plaintiff will ultimately be unable to establish that maintenance of a class action under Rule 23 is proper).

Here, Defendant also suggests that Plaintiff be required to prove a likelihood of success at the class certification stage.  Such a requirement would go beyond the burden permissible under *Mantolete*.  Moreover, courts are not obligated to require that a plaintiff satisfy the *Mantolete* burden.  Rather, courts may, in their discretion, require such a showing prior to allowing pre-certification discovery.  Here, the Court did not require this showing at the outset of discovery, and Defendant did not urge the Court to do so.  Moreover, the Court presently concludes that Plaintiff can satisfy her burden.

Thus, the Court's attention turns to the particular discovery requests at issue and the remainder of Defendant's asserted objections.

    b.   Relevance

As highlighted above, the relevance standard is very broad and parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1).  Here, the Court finds that all of the information presently in dispute is relevant or, at a minimum, contains relevant information within a larger set of information.

Concerning the contact information of the putative class members, "[a]s a general rule, before class certification has taken place, all parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." *Wiegele v. FedEx Ground Package Sys.*, No. 06-CV-01330-JM(POR), 2007 U.S. Dist. LEXIS 9444, at *2 (S.D. Cal. Feb. 8, 2007) (citation omitted).  Moreover, discovery of the contact information of putative class members is routinely allowed.  *See, e.g.*, *Artis*, 276 F.R.D. at 352 ("The disclosure of names, addresses, and telephone numbers is a common practice in the class action context.") (citing *Currie-White v. Blockbuster, Inc.*, No. C 09-2593 MMC (MEJ), 2010 U.S. Dist. LEXIS 47071, at *2 (N.D. Cal. Apr. 15, 2010); *Babbitt v. Albertson's Inc.*, No. C-92-1883 SBA (PJH), 1992 U.S. Dist. LEXIS 19091, at *6 (N.D. Cal. Nov. 30, 1992); *Putnam v. Eli Lilly & Co.*, 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) ("[I]t seems to the Court that contact with [class members] could well be useful for plaintiff to determine, at a minimum, the commonality and typicality prongs of Rule 23.")); *Kaminske*, 2010 U.S. Dist. LEXIS 141514, at *14-15 (finding contact information of putative class members "relevant to aid in the identification and collection of . . . potentially common evidence, as well as to test Plaintiff's theories regarding the commonality of Defendant's practices.") ("Regardless of whether this is enough to constitute a prima facie showing with respect to Rule 23(b), it is, at a minimum, sufficient to establish that the requested discovery is likely to produce persuasive information substantiating the class action

allegations."); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981) (recognizing that class counsel in Rule 23 class actions must be allowed to communicate with potential class members for the purpose of notification and gathering information, even prior to class certification).  Here, the Court concludes that the name, address and telephone numbers of putative class members are relevant to Plaintiff's claims.

Concerning Defendant's payroll records, "SONIC" records, time cards, work schedules and Ghant charts, the Court concludes that such records are relevant to Plaintiff's claims and whether Plaintiff can establish the commonality and typicality requirements of Rule 23.  Indeed, records showing that Jenny Craig employees were working "off the clock" or that they were not paid overtime or provided adequate breaks go to the very heart of Plaintiff's case.

Finally, concerning Defendant's "Message Board" records, according to Plaintiff's deposition testimony, Jenny Craig employees nationwide posted complaints to the "Message Board" about the improper actions alleged in this case.  If that is the case, such complaints would be relevant to Plaintiff's claims and whether Plaintiff can establish the commonality and typicality requirements of Rule 23.  However, it is very likely that Defendant's "Message Board" records consist mostly of irrelevant information.

c.    Overbreadth and Undue Burden

Defendant asserts that Plaintiff's discovery requests are overbroad and unduly burdensome.  (ECF No. 37-1 at 16:10-11.)  The Court agrees, although the Court finds that some limited discovery is appropriate.

In circumstances similar to the instant dispute, numerous district courts in California have "concluded that plaintiffs were not entitled to discovery from branch locations where they never worked absent some evidence to indicate company-wide violations."  *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 508 (C.D. Cal. 2011). In *Nguyen*, the court concluded that "[b]ecause Plaintiff has failed to produce any evidence of company-wide violations, and Defendant admittedly has produced contrary evidence showing company-wide policies consistent with California law, there is no basis

at this time to require discovery beyond the Irvine facility where Plaintiff worked." *Id.* at 508 (citing *Martinet v. Spherion Atl. Enters., LLC*, No. 07cv2178 W (AJB), 2008 U.S. Dist. LEXIS 48113, at *2 (S.D. Cal. June 20, 2008) (limiting discovery to the office where plaintiff worked until such time that plaintiff can show evidence of company-wide violations); *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Col. 1998) (same)).  The *Nguyen* court also rejected the plaintiff's argument that "if supervisors at the Irvine facility did not follow company guidelines regarding meal breaks and wage statements, then it is reasonable to assume that supervisors at other facilities must also have violated these same guidelines." *Id.* at *508.  The court found this argument to be "pure speculation and [found] it equally likely that supervisors at other California facilities followed the company guidelines." *Id.*

In *Franco v. Bank of Am.*, No. 09cv1364-LAB (BLM), 2009 U.S. Dist. LEXIS 111873 (S.D. Cal. Dec. 1, 2009), Magistrate Judge Barbara Major of this district granted in part the plaintiff's motion to compel the contact information of putative class members in a class action alleging wage and hour claims similar to those alleged by Plaintiff in the instant case. *Id.* at *1-2.  In that case, the plaintiff alleged that Bank of America had "a company-wide policy and practice instituted by Defendant's corporate office that results in the nonpayment of overtime hours to employees." *Id.* at *3.  Plaintiff sought the contact information of all Bank of America tellers, senior tellers and sales and service specialists employed in any of Bank of America's California branches. *Id.* at *4.  In opposition, Defendant presented evidence that its company-wide policies were lawful. *Id.* at *10-11.  In concluding that plaintiff's request was overly broad and unduly burdensome, Judge Major stated:

> Plaintiff has not provided sufficient facts to support his claim of a company-wide policy and practice by Defendant to withhold regular and overtime wages from its employees, especially in light of Defendant's evidence of contrary company-wide policies.  While the allegations in Plaintiff's declaration support his request for the contact information of the approximately 100 current and former employees in the branch offices where Plaintiff worked, it does not support his request for the contact information of the approximately 27,000 such employees located throughout California.

*Id.* at *10-11 (citing *Tracy*, 185 F.R.D. at 305-13).

Here, the Court finds that Plaintiff has not provided sufficient evidence to expand discovery beyond those Jenny Craig centers at which she worked.  According to Plaintiff's deposition testimony, she was instructed[8] by "the company" or "the boss" to work either before clocking in or after clocking out because they were "having too much overtime."  (ECF No. 36-3 at 5:5-7:24.)  Plaintiff also complied with her superior's instruction to have her staff members do likewise.  (*Id.*)

Although it is not clear how many centers Plaintiff worked at, at a minimum, she worked at the Chula Vista and Point Loma centers.  (*Id.* at 9:22-10:5.)  Plaintiff also testified that although she could not confirm whether the improper overtime and break practices occurred at every center in the country, she did testify that she knew "that it happens in – especially every center [she'd] ever been to" in her market.  (*Id.* at 16:18-17:11, 19:20-22.)  Plaintiff also testified that Defendant's "Message Board" contained similar complaints from employees at every Jenny Craig center across the country.  (*Id.* at 17:12-19:25.)

Upon review of Plaintiff's deposition testimony, the Court concludes that it is appropriate to limit discovery to only those Jenny Craig centers where Plaintiff worked.  Plaintiff's testimony that the alleged improper practices occurred at every center throughout the country is admittedly an assumption that the Court finds insufficient to justify expanding discovery beyond Plaintiff's market.  (*Id.* at 19:20-25.)  Due to the overly broad nature of Plaintiff's requests, it follows that requiring Defendant to produce information and documents regarding its employees outside of Plaintiff's market would be unduly burdensome.

In addition, with one exception discussed below, the Court finds that Defendant need not produce its "Message Board" records.  Although Defendant does not provide

---

[8] While it is not entirely clear from the deposition transcripts provided to the Court, it appears the instructions came from an individual named Vincent. Plaintiff also testified that the instructions came from "the company" and "the boss."  (ECF No. 36-3 at 6:19-7:8, 12:16-22.)

details into the burden and expense that such production would require, the fact that these records are anonymous suggests that verification of the comments would impose a significant burden. However, the Court finds that if Plaintiff will identify her "Message Board" user name, Defendant should produce all messages that Plaintiff posted or commented upon from March 18, 2010 through June 30, 2011. Defendant's suggestion that the posts be limited to address the allegations in this case is rejected.

d.   <u>Privacy</u>

Now that the Court has found that the requested information is relevant but that discovery is limited to Plaintiff's market, the Court now turns to Defendant's privacy objections.

"When the constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced.'" *Artis*, 276 F.R.D. at 352 (quoting *Wiegele*, 2007 U.S. Dist. LEXIS 9444, at *2). "Compelled discovery within the realm of the right of privacy 'cannot be justified solely on the ground that it may lead to relevant information.'" *Id.* (quoting *Wiegele*, 2007 U.S. Dist. LEXIS 9444, at *2). "Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'" *Wiegele,* 2007 U.S. Dist. LEXIS 9444, at *2 (quoting *Lantz v. Superior Court*, 28 Cal. App. 4th 1839, 1854 (Cal. Ct. App. 1994)).

On the one hand, it is unlikely that production of time cards, work schedules or Ghant charts would significantly invade anyone's privacy. Accordingly, the Court finds that Defendant should be compelled to produce these records, limited to the employees

/ / /

/ / /

/ / /

1    that also worked in Plaintiff's market.[9]

2         On the other hand, disclosure of contact information and payroll records of putative

3    class members would infringe upon the individuals' privacy.  Moreover, Defendant's

4    "SONIC" records likely contain personal and financial information of Defendant's

5    clients.

6         Concerning the privacy of contact information of putative class members, the *Artis*

7    court stated:

8

9    [T]he putative class members may possess relevant discoverable
     information concerning issues dealing with Plaintiff's . . . claims, as well
10   as other class certification issues.  Further, the privacy interests at stake in
     the names, addresses, and phone numbers must be distinguished from those
11   more intimate privacy interests such as compelled disclosure of medical
     records and personal histories. [Citation.]   While the putative class
12   members have a legally protected interest in the privacy of their contact
     information and a reasonable expectation of privacy the information sought
13   by Plaintiff is not particularly sensitive. [Citation.] As a result, Defendants'
     privacy objections must yield to Plaintiff's request for the information.

14   276 F.R.D. at 353.

15        Here, the Court agrees with the reasoning set forth in *Artis*.  Thus, the Court finds

16   that disclosure of the name, address and phone number of the putative class members

17   within Plaintiff's market is discoverable.  The Court also finds that "the parties can craft

18   a protective order that limits the use of any contact information to the parties in this

19   litigation and protects it from disclosure.  The discovery is to be produced to Plaintiff's

20   counsel only and to be used only in this litigation.  Under these circumstances, the

21   potential privacy interests of putative class members are adequately balanced." *Id.* (citing

22   *Khalilpour v. CELLCO Partnership*, No. C 09-02712 CW (MEJ), 2010 U.S. Dist. LEXIS

23   43885, at *3 (N.D. Cal. Apr. 1, 2010)); *see also Putnam*, 508 F. Supp. 2d at 814 ("[T]he

24   Court finds that plaintiff's needs here outweigh the concerns of a defendant.  Plaintiff has

25   shown a legitimate need for the requested information to determine, among other things,

26   _____

27        [9] Although the Court cannot determine the extent of Plaintiff's market based on the
     evidence presented, the Court expects the parties will be able to agree upon the locations
28   where she worked.  If the parties are not presently in agreement on this issue they shall
     promptly meet and confer so that the authorized discovery can be gathered and produced.

whether common questions of law or fact exist and if plaintiff's claims are typical.  The need is especially compelling here where the information to be disclosed concerns not disinterested third parties, but rather potential plaintiffs themselves.").

Next, the Court concludes that Plaintiff does not need payroll records.  In *Nguyen*, the court concluded that the plaintiff was not entitled to pay check stubs or documents detailing wage payments because such documents

> contain more confidential and sensitive information than simply time records or contact information.  Accordingly, after balancing Plaintiff's need for the information against the asserted privacy interests, the Court finds that the privacy interests weigh against providing this information.  Plaintiff's counsel can still obtain this information from any individual employee who chooses to participate in this litigation and voluntarily provides such information.

275 F.R.D. at 512-13.

Finally, the Court finds that Defendant should produce its "SONIC" records related to Plaintiff's market.  Importantly, these records are solely within Defendant's possession and Plaintiff would have no other means of obtaining the information sought.  *See Doninger*, 564 F.2d at 1313 (recognizing that "the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant.") (citation omitted).

In conclusion, the Court finds that privacy concerns justify withholding from production Defendant's payroll records, but that class member contact information, time cards, work schedules and Ghant charts should be produced.  Moreover, these documents should be produced subject to a protective order in order to strike the appropriate balance between privacy concerns and Plaintiff's need for the information.[10]

/ / /

/ / /

/ / /

---

[10] Although an "opt-out" procedure is also an appropriate method of protecting privacy rights, the Court finds that a protective order is sufficient and more efficient in light of the fact that Plaintiff's motion for class certification deadline is fast approaching.

e.     Attorney-Client Privilege, Attorney Work Product Doctrine and Vague and Ambiguous Objections

Plaintiff asserts in the joint motion that Defendant has objected to the discovery on grounds that it invades the attorney-client privilege and the attorney work product doctrine. (ECF No. 37-1 at 11:1-8.) In addition, Defendant generally asserts that Plaintiff's discovery requests are vague and ambiguous. (*Id.* at 16:10.) However, Defendant's portion of the joint motion does not specifically address these objections. The Court recognizes that Defendant did assert these objections to some of the disputed requests when it initially served its responses. (*See, e.g.*, ECF No. 36-2 at 7:6-7, 16:27.) However, Defendant has arguably waived these objections by failing to provide reasons for the objections as required under Federal Rule of Civil Procedure 34(b)(2)(B). *See Darraj v. Cnty. of San Diego*, No. 11cv1657-AJB (BGS), 2012 U.S. Dist. LEXIS 168968, at *2 n.1 (S.D. Cal. Nov. 28, 2012); *Soto*, 282 F.R.D. at 498 ("When a party resists discovery, he 'has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'") (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998)). In any event, the Court finds no basis for Defendant's position that the disclosure of the disputed information would violate the attorney-client privilege or the attorney work product doctrine. Nor are any of Plaintiff's requests so vague or ambiguous that Defendant would be unable to form an adequate response. Accordingly, Defendant's objections on these bases are overruled.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED:

1.     On or before **July 3, 2013**, Defendant shall provide further responses to Plaintiff's Interrogatory Nos. 14, 17 and 18 in that Defendant shall disclose the names, addresses and telephone numbers of all putative class members formerly or presently employed in Jenny Craig centers located within Plaintiff's market. Defendant is not required to identify the names or contact information of employees outside of Plaintiff's market.

2.    In further response to Plaintiff's Request for Production Nos. 18, 20, 22, 28, 39 and 41, on or before **July 3, 2013**, Defendant shall produce its "SONIC" records, time cards, work schedules and Ghant charts related to all putative class members formerly or presently employed in Jenny Craig centers located within Plaintiff's market, from March 18, 2010 through June 30, 2011.  Defendant is not required to produce such documents pertaining to outside of Plaintiff's market.

3.    On or before **June 19, 2013**, Plaintiff shall disclose to Defendant her "Message Board" user name.  If Plaintiff does so, on or before **July 3, 2013**, Defendant shall produce all "Message Board" postings that Plaintiff posted or commented upon from March 18, 2010 through June 30, 2011. Defendant is not required to produce any other documents in response to Plaintiff's Request for Production Nos. 15 and 16.

4.    Defendant is not required to produce payroll records in response to Plaintiff's Request for Production No. 30.

5.    Counsel for the parties shall meet and confer regarding the terms of a proposed protective order.  On or before **June 25, 2013**, the parties shall file a joint motion for protective order for the Court's review setting forth, at a minimum, the terms to govern the use of the to-be-disclosed names, addresses, telephone numbers and documents, such terms to be drafted to protect the privacy interests of the third parties.  The parties shall ensure that the proposed protective order contains the language required by Section V of the undersigned's Civil Chambers Rules.

In addition, in light of the Court's conclusions that some additional discovery is necessary, IT IS HEREBY ORDERED:

1.    The deadline for the parties to complete discovery, which previously expired on May 31, 2013, shall be reopened for the limited purpose of completing the discovery authorized by this Order.  The new deadline to

complete discovery shall be **July 3, 2013**.

2.      Plaintiff's deadline to file a motion for class certification shall be extended from July 1, 2013 to **August 16, 2013**.

**IT IS SO ORDERED.**

DATED:  June 12, 2013

DAVID H. BARTICK
United States Magistrate Judge