1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10  NASHONNA COLEMAN, an              CASE NO. 11cv1301-MMA (DHB)
    individual, on behalf of herself and all
11  others similarly situated,        **ORDER AFFIRMING TENTATIVE RULING**;
12                        Plaintiff,
                                      [Doc. No. 63]
13      vs.
                                      **DENYING PLAINTIFF'S MOTION**
14                                    **FOR CLASS CERTIFICATION**

15                                    [Doc. No. 51]
16  JENNY CRAIG, INC., a Delaware
    corporation,
17
                         Defendant.
18

19          Plaintiff Nashonna Coleman brings this putative collective and class action

20  against Defendant Jenny Craig, Inc., alleging violations of the Fair Labor Standards

21  Act, 29 U.S.C. § 201, *et seq*., and California's wage and hour laws.  The parties

22  appeared before the Court on November 4, 2013 for a hearing on Plaintiff's motion

23  for class certification pursuant to Federal Rule of Civil Procedure 23.  Having

24  considered the oral arguments of counsel and all pertinent matters of record, the

25  Court **AFFIRMS** its previously issued tentative ruling and **DENIES** Plaintiff's

26  motion for class certification.

27                          <u>**BACKGROUND**</u>

28          Plaintiff is a former hourly, non-exempt employee of Jenny Craig, a

nationwide weight loss company.[1]  She began as a floating hourly Program Director in September 2009 at different locations, and then worked as an Assistant Director. According to Plaintiff, employees "were not paid for all time worked;" "routinely worked before and after their shifts ended, without being paid for their time;" "were not permitted to clock in until just a few minutes before their shifts began, even though they were required to arrive earlier in order to get the store ready to open;" and, "were often required to continue to work after clocking out at the end of their shifts." *See First Amended Complaint* ¶ 19.  Plaintiff further alleges that employees "often worked without taking meal or rest periods." *Id*. ¶ 20.  Plaintiff claims that Jenny Craig, "as a matter of established company policy and procedure, in the State of California, scheduled to work and/or required, suffered or permitted Plaintiffs and other members of the Class to work, without paying them for each and every hour worked during the Class Period." *Id*. ¶ 34.

In her First Amended Complaint, Plaintiff alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and California wage and hour laws.[2]  Specifically, Plaintiff alleges that Jenny Craig: (1) failed to pay regular and overtime compensation in violation of the FLSA;[3] (2) failed to pay wages owed in

---

[1]  When determining whether to certify a class, the Court must take Plaintiff's substantive allegations as true.  *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982).

[2]  The claims in the First Amended Complaint were also brought by former Plaintiffs Teresa Samaniego and Gail Chillinsky.  *See* Doc. No. 4.  However, on May 15, 2012, the Court granted Jenny Craig's motion to compel arbitration of Samaniego and Chillinsky's claims, ordered the parties to proceed to arbitration, and dismissed Samaniego and Chillinsky's claims without prejudice.  *See* Doc. No. 22.  Plaintiff Coleman has submitted declarations from Samaniego and Chillinsky in support of her motion for class certification.  Jenny Craig argues that these declarations should be disregarded by the Court, as Samaniego and Chillinsky are prohibited from participating in this class action due to the waiver contained in their arbitration agreements. However, as percipient witnesses, Samaniego and Chillinsky provide relevant testimony which may be considered by the Court.

[3] Plaintiff filed this action as a putative collective and class action, however she does not address her FLSA claim in this motion, and the provisions of Rule 23 are inapplicable in the collective action context. *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) ("A 'collective action' differs from a class action.");

violation of California Labor Code §§ 201, 203, 216, 218.5 and 227.3; (3) failed to

pay overtime compensation in violation of California Labor Code §§ 510, 1194 and

1198; (4) failed to timely pay wages upon termination in violation of California

Labor Code §§ 201, 202 and 203; (5) failed to provide meal and rest breaks in

violation of California Labor Code §§ 226.7 and 512; (6) engaged in unfair

competition in violation of California Business and Professions Code §§ 17200, *et

seq.*; and (7) is subject to penalties pursuant to California Labor Code § 2699, *et

seq.*[4]

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff moves for certification of a California class of 1,055 former and

current employees of Jenny Craig. Plaintiff asserts that her claims are suitable for

class certification because they raise questions common to the proposed class,

specifically: 1) whether Jenny Craig's policies and/or practices violate California's

wage and hour laws, and 2) whether the class members have been denied wages,

overtime compensation, meal and rest breaks, and split shift premiums, as a result of

these unlawful policies and/or practices. Plaintiff further contends that these

common questions predominate over individual issues; her claims are typical of the

claims of putative class members; she is an adequate class representative; and a class

action is the superior method of resolving this litigation.

Plaintiff proposes the following class and subclass definitions:

All current and former employees of Defendant who held the hourly, non-exempt positions, such as "Program Director," or "Jenny Craig Consultant," or "Customer Service Coordinator," or "Assistant Centre Director" at Defendant's California centres between March 18, 2010 and June 30, 2011 ("the Class Period") and who:

---

*Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1529 (2013) (Rule 23 inapplicable to collective actions under FLSA).

[4] Plaintiff does not move to certify her PAGA claim under Rule 23, pursuant to authority from district courts in this circuit finding that a representative PAGA claim need not satisfy Rule 23 requirements.

- **Class A**[5]: Were not paid for all hours worked in any pay period that is within the Class Period ("**The Off-the-Clock Class**"); and/or,

- **Class B**: Were not provided with overtime pay in any pay period that is within the Class Period ("**The Overtime Class**"); and/or,

- **Class C**: Were not provided with meal and rest periods ("**The Meal and Rest Period Class**"); and/or,

- **Class D**: Were not provided with accurate itemized wage statements ("**The Wage Statement Class**"); and/or,

- **Class E**: Were not provided with all wages due and owing at the time of their terminations ("**The Waiting Time Period Class**"); and/or,

- **Class F**: Were not provided with split shift payments ("**The Split Shift Class**"); and/or,

- **Class G**: Those currently-employed hourly employees who are subject to Jenny Craig's policies or practices regarding short/interrupted lunches; split shift payments, rest breaks, and resulting in off the clock work ("**The Injunctive Relief Class**").

Plaintiff also defines a "**Subclass A**" consisting of any member of Classes A through G who signed a class action waiver in an arbitration agreement provision containing a clause prohibiting that class member from recovering proceeds from resolution of a class action.

Plaintiff relies on the following evidence in support of her motion: 1) Jenny Craig's computer records, including the eTime Verification System, payroll records, and GANTT and SONIC records;[6] 2) declarations of five putative class members,[7]

---

[5] "Classes" A–G are more properly labeled subclasses. However, the Court will use Plaintiff's terminology for ease of reference.

[6] According to Plaintiff, "GANTT charts show employee work schedules and customer appointments." *Plt's Memo.*, 9, citing *Realin Decl.*, Ex. 2. (*Matson Depo.* at 11:4-8). "SONIC, [Jenny Craig]'s customer relationship management system, tracks and stores all of the interactions between JC's employees and customers, from enrollment through the purchase of food and weight tracking." *Id.*, citing *Matson Depo.* at 6:21-25.

[7] The five putative class members include Plaintiff; Theresa Heckman, employed at the Chula Vista Jenny Craig centre during the class period; Miriam del Rio, who currently works at the Chula Vista location; Raynette Ciufo, who was employed by Jenny Craig during the class period; and, Monica Haber, who worked at the Kearny Mesa and Chula Vista centres during the class period. Monica Haber and Miriam Del Rio signed Jenny Craig's arbitration and class action waiver agreement. *Mueller Decl.*

both current and former employees; and 3) declarations of former plaintiffs,
non-class members Samaniego and Chillinsky.

**PLAINTIFF'S MOTION TO STRIKE AND EVIDENTIARY OBJECTIONS**

Plaintiff moves to strike several declarations submitted by Jenny Craig in support of its opposition to her motion. First, Plaintiff moves to strike the declarations of putative class members Gina Cooper, Karina Lopez, and Shannon Schall. Plaintiff complains, *inter alia*, that Cooper was not on the class list produced during discovery, and that all three declarations are unreliable due to the similarity of the statements contained therein. Second, Plaintiff moves to strike Exhibit A ("Employee Handbook from 2011 and the Employee Handbook in effect until 2011") and Exhibit C (an e-Time Report verification dated February 10, 2009) to the declaration of Chrystal Danesteh.[8] Plaintiff asserts that these exhibits are irrelevant to class certification because they are outside the class period. In addition, Plaintiff makes various relevancy and hearsay objections to portions of Danesteh's declaration.

Third, Plaintiff moves to strike portions of the declaration of Eric Matson, one of Jenny Craig's 30(b)(6) witnesses, containing hypotheticals related to the operation of the SONIC customer relationship management system. In the alternative, Plaintiff objects to these statements on relevancy grounds. Finally, Plaintiff objects to the term "voluntarily" as used in the following statement in the declaration of Kim Mueller:[9] "No fewer than 660 individuals in Plaintiff's proposed

¶13, Ex. E.

[8] Jenny Craig has submitted the Declaration of Chrystal Danesteh, Senior Director of North American Business. *Danesteh Decl.* ¶ 2. Jenny Craig designated Danesteh as a 30(b)(6) witness with respect to the number of class members, their job duties, Jenny Craig's policies and practices regarding overtime, off the clock, meal and rest breaks, and employee time keeping.

[9] Kim Mueller has been employed by Jenny Craig for the past 15 years as the Director of Payroll and Benefits Administration. *Mueller Decl.* ¶ 2. She has provided relevant information regarding Jenny Craig's payroll policies and practices.

11cv1301

class have also voluntarily signed the same arbitration agreement with JCI . . . ." According to Plaintiff, this states a legal conclusion that these individuals "voluntarily" signed the agreement.

In conjunction with a Rule 23 class certification motion, the Court may consider all material evidence submitted by the parties to determine Rule 23 requirements are satisfied, and need not address the ultimate admissibility of evidence proffered by the parties. *Gonzalez v. Millard Mall Servs.*, 281 F.R.D. 455, 459 (S.D. Cal. 2012); *Waine-Golston v. Time Warner Entertainment-Advance/New House P'ship*, 2012 U.S. Dist. LEXIS 179611 (S.D. Cal. 2012); *Aburto v. Verizon Cal., Inc.*, 2012 U.S. Dist. LEXIS 329 (C.D. Cal. 2012); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337 (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that may not be admissible at trial."); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). As such, the Court **DENIES** Plaintiff's motion to strike and **OVERRULES** Plaintiff's evidentiary objections to the extent the evidence is considered in the context of this motion.

Furthermore, with respect to the declarations of the three putative class members, the fact that the declarations are virtually identical does not ipso facto render them incompetent, particularly at this stage of the proceeding where the Court is applying a lenient standard of review. *See Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1120 (W.D. Wash. 2011) ("But at this stage, under a lenient standard, the use of similarly worded or even 'cookie cutter' declarations is not fatal to a motion . . . .").

Finally, to the extent that the evidentiary material submitted by either party is speculative or represents a legal conclusion, as a matter of course, the Court simply need not factor that material into the analysis. *See Burch v. Regents of the University of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("Objections on any of these grounds are simply superfluous in this context.") (citation omitted). ///

**CLASS CERTIFICATION STANDARD**

Federal Rule of Civil Procedure 23 governs the certification of a class. A plaintiff seeking class certification must affirmatively show the class meets the requirements of Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("*Dukes*" hereafter). To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). If these prerequisites are met, the Court must then decide whether the class action is maintainable under Rule 23(b).

The Court exercises discretion in granting or denying a motion for class certification. *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2011). The moving party must provide allegations and supporting facts to satisfy the Rule 23 requirements. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977). The Court is required to perform a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 131 S. Ct. at 2551. "'[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with Rule 23(a) requirements." *Ellis*, 657 F.3d. at 981 (emphasis in original).

**DISCUSSION**

**1.  *Rule 23(a)(1): Numerosity***

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although the parties do not agree upon the exact number of putative class members, they do not dispute that

Rule 23(a)(1)'s numerosity requirement is met in this case.[10] *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (classes of 40 or more individuals are generally sufficient to satisfy numerosity requirement).

### 2. Rule 23 (a)(3) and (4): Typicality and Adequacy

Rule 23(a)(3) requires a plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In addition, a representative party must fairly and adequately represent the interests of the proposed class. Fed. R. Civ. P. 23(a)(4). The parties dispute whether Plaintiff's claims are typical of the class and whether she is an adequate representative. Because Plaintiff fails to satisfy the requirements of Rules 23(a)(2), as discussed below, the Court need not determine the adequacy of Plaintiff's representation or the typicality of her claims.

### 3. Rule 23(a)(2): Commonality

Under Rule 23(a)(2), one or more questions of law or fact must be common to the proposed class. Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Dukes*, 131 S. Ct. at 2556 (internal citation omitted). However, "[a]ny competently crafted class complaint literally raises common 'questions.'" *Dukes*, 131 S. Ct. at 2551, quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-32 (2009). The real test under *Dukes* is whether a class action can "generate common answers apt to drive the resolution of the litigation." *Id.* In order to so

---

[10] Jenny Craig contends that 660 out of 1,055 employees identified as putative class members signed a valid arbitration agreement and waived their right to bring or participate in a class action. *Mueller Decl.* ¶ 12. Jenny Craig argues that these 660 individuals are not putative class members and should not be included in the proposed class definition, resulting in a proposed class consisting of 395 individuals. It appears from the record that earlier in this litigation Plaintiff agreed the putative class consisted of 395 individuals. *See Joint Motion for Determination of Discovery Dispute*, Doc. No. 37-1, 4; *Order Resolving Discovery Dispute*, Doc. No. 40, 8-9 ("With respect to numerosity, it is uncontested that there are 395 putative class members."). The Court need not determine the exact number of putative class members in light of its determination that certification of any class or subclass in this action is inappropriate.

demonstrate, a plaintiff must present "significant proof" that the employer operated under a "general policy" or practice. *Wang v. Chinese Daily News*, __F.3d __ , 2013 WL 4712728, at *4 (9th Cir. Sept. 3, 2013), citing *Dukes*, 131 S.Ct. at 2552-53. "If there is no evidence that the entire class was subject to the same allegedly" unlawful policy or practice, then "there is no question common to the class." *Ellis*, 657 F.3d at 983.

In an effort to comply with the standards set forth in *Ellis* and *Wang*, Plaintiff proposes that the following questions are common to all putative class members:

- Whether Jenny Craig has a practice of not paying premiums for short or late meals breaks due to a companywide payroll system that pays premiums only for completely missed meal breaks.

- Whether Jenny Craig's policies force employees to work off the clock and uncompensated overtime.

- Whether Jenny Craig's policies prevent employees from taking uninterrupted meal breaks or missing meal and rest breaks.

- Whether Jenny Craig's split shift scheduling policy is illegal.

Jenny Craig asserts that there is no companywide practice of failing to pay premiums for short or late meal breaks, nor any policy that prevents employees from taking the meal and rest breaks to which they are entitled under California law. Jenny Craig further argues that the split shift scheduling policy complies with California law.

### a) Jenny Craig's Policies

As an initial matter, Jenny Craig's official policy with respect to overtime and off the clock work is simple: an employee gets paid for all time worked. This policy is implemented companywide and is published to employees both in the company manual and the electronic payroll system. Jenny Craig's April 2009 Policy Manual states that "[i]t is the policy of Jenny Craig to require employees to report for work punctually and work all scheduled hours and any required overtime." *Realin Decl.*, Ex. 24. The manual further explains:

Employee is responsible for arriving at work with sufficient time to clock

> in as well as logon to any other system as appropriate and be at workstation at beginning of shift. Employee should not clock in more than 7 minutes prior to the start of his/her scheduled shift. Non-exempt (hourly) employees are responsible for accurately reporting and approving hours worked in the automated time and attendance system.

*Id*. Jenny Craig's non-exempt, hourly employees use the eTime Verification System to electronically track and record the hours they work. *Mueller Decl.* ¶ 4. During the class period, Jenny Craig's eTime Verification system included the following policy statement regarding payment for all time worked by an employee: "All hourly employees are entitled to pay for all time worked." *See* eTime Verification for Pay Dates Ending 5/10/10 and 5/25/10, *Matty Decl.*,[11] Ex. A.

Jenny Craig's 2011 Employee Manual includes the following policy regarding meals and rest breaks:

> Non-exempt (hourly) employees must take the required meal and rest periods in which they are entitled to during the workday.
>
> • A 10 minute paid rest period must be made available for each four (4) hours worked.
>
> • A 30 minute unpaid meal period must occur for every five (5) hour shift worked.
>
> • Employees may not leave early instead of taking a meal period.
>
> • Rest periods may not be combined, taken at the end of a shift, or used to extend a meal period.
>
> • It is the supervisor's responsibility to review the employee's work schedule.
>
> • It is both the employee's and the supervisor's responsibility to ensure meal and rest periods are scheduled in accordance to Company policy.

*2011 Employee Manual* at 52. Jenny Craig's eTime Verification system included the following policy statement regarding meal and rest breaks:

> All hourly employees are also entitled to a minimum of one 30-minute

---

[11] Tara Matty is employed by Jenny Craig in the Human Resources Department as Administrator of the Talent Management System. *Matty Decl.* ¶ 2. In her capacity as administrator, she provided monthly training on the eTime Verification System to all non-exempt employees during the first six months or so of the class period. *Id*. ¶ 6.

meal period for a 5-hour work shift and two 30-minute meal breaks for a 10-hour shift (excluding split shifts). The employee is to have uninterrupted breaks and is encouraged to take his or her break away from the work space or to post a note at the work space notifying others that he or she is on a break. The employee must clock out for each meal period and will not be paid for this time. Each employee is also entitled to a 10-minute rest break for each 4-hour period worked. The employee is paid for each 10-minute rest period and therefore should not clock out for this rest period. It is against Jenny Craig's policy for employees to skip a 1/2 hour lunch period and leave early to compensate for a missed meal break. It is also against Jenny Craig's policy to insert meal breaks where none have been taken. The meal and rest periods are for you to take a break from your work day.

*See* eTime Verification for Pay Dates Ending 5/10/10 and 5/25/10.

Plaintiff contends that despite the official policy statements, referenced above, Jenny Craig has uniform policies and practices that result in employees not being paid for all time worked, and missing meal and rest periods. Plaintiff claims that Jenny Craig mandated off the clock work in order to avoid paying employees overtime due to the company's "never turn a customer away" policy and the "two people rule."

Plaintiff claims that Jenny Craig's policy to "never turn a client away" resulted in off the clock or uncompensated overtime work and prevented employees from leaving after clocking out at the end of a shift. Plaintiff offers Jenny Craig's August 2010 Centre Operations Manual as evidence of Jenny Craig's general policy of putting the customer first:

As a company, our goal is to guarantee that every client who comes into a centre receives excellent service and leaves the centre completely satisfied. This requires operational excellence, which relies on policies and procedures being followed consistently in all Jenny Craig centres.

*See 2010 Operations Manual* at 1. With respect to the "never turn a client away" policy, the manual explains the company's procedure for interacting with a "walk-in lead," defined as a "non-client who comes into the centre to ask for information about the program without having an appointment." *Id*. at 1-A-4. Step two in the procedure indicates that "the goal is to never let a lead walk out of the centre without a Sales Presentation." *Id*.

Jenny Craig's "two people rule" is set forth in a 2003 Safety Manual under the heading "Emergency Planning/Prevention," and reads "[m]ake sure there are always two staff members in the Centre at all times, including opening and closing of the Centre." Immediately following, the manual provides:

> Know where your fire extinguisher is and how to use it. Check its expiration date. If it expired, contact the Facilities Department at 800-939-6677 Option 2.
>
> Make sure you have a well-stocked First Aid Kit including bandages, sterile gauze, cotton, alcohol, eyewash, antibacterial cream, scissors, and tweezers.

*See 2003 Safety Manual* at 2. This policy is reiterated in an updated Safety Manual. *See 2012 Safety Manual* at 1-A. The updated manual includes an exception to the "two people rule:"

> EXCEPTION: There are times, however, when it is not possible for two staff members to be in the Centre at all times. One such example is when two staff members are working together and one staff member must take a required lunch or meal break.
>
> When this occurs, the employee must close the Centre and take their required lunch or meal breaks concurrently. Closing the Centre means locking the door and not receiving any clients even if one is scheduled for an appointment. That client must be rescheduled.
>
> If one employee wishes to leave the Centre during their lunch or meal break, the Centre must be closed and BOTH employees must take their break outside of the Centre. Employees must be allowed to leave the Centre to take required lunch or meal breaks, and no one should be left alone in the Centre.

*Id.* at 7-D.

With these policies in mind, the Court considers whether each of Plaintiff's proposed subclasses meets Rule 23(a)(2)'s commonality requirement.

### b) Classes A and B: The Off the Clock and Overtime Classes

Plaintiff seeks to certify two subclasses of current and former employees who purportedly worked off the clock and uncompensated overtime. Plaintiff submits that the following questions are common to these two subclasses: 1) whether Jenny Craig has a practice of requiring employees to perform certain tasks off-duty, including working approximately 10-20 minutes to open a store, as well as closing a

11cv1301

store; 2) whether Jenny Craig's "never turn a client away" policy results in off the clock or uncompensated overtime work; and, 3) whether Jenny Craig's "two people rule," requiring two employees to be present at a store at all times during operational hours, forces employees to work off the clock without compensation.

Plaintiff submits declarations from herself and several other putative class members claiming that they had to work off the clock to fulfill their duties. For example, according to Theresa Heckman, "[a]t times, when I stayed past my scheduled shift to assist a walk-in customer, I worked off the clock without clocking back in. Because two employees had to always be present at the centre, the other employee could not leave until I was done with assisting a customer." *Heckman Decl.* ¶ 7. Raynette Ciufo states that she "would come to work 30 minutes early to begin the [opening] procedures," but she "was not allowed to clock in before the start of [her] shift" regardless of whether she had started working. *Ciufo Decl.* ¶ 8.

Jenny Craig offers the declaration of Gina Cooper, a current employee who worked at the Escondido centre during the class period. *Cooper Decl.* ¶ 2. According to Cooper, "[t]he opening and closing procedures consisted of simple tasks that took no more than 5 to 10 minutes total" and "[a]t opening, after we clocked in, one employee could help the first customer while another employee completed the opening procedures, and thus, neither opening employee had to show up before the start of their shift in order to complete the opening procedures." *Id.* ¶ 14. Karina Lopez worked at the Point Loma centre during the class period. *Lopez Decl.* ¶ 2. Lopez states that "[w]hether rescheduling or servicing a walk-in client" at the end of her shift, she "never performed such work off the clock or without full compensation for my hours worked." *Id.* ¶ 20.

With respect to overtime, the payroll evidence presented shows that Plaintiff and other putative class members received overtime payments during many, if not most, pay periods. This evidence is plainly inconsistent with Plaintiff's claim that there was a common policy or practice of failing to compensate employees for

overtime work.  Plaintiff's own payroll records do not support her claim of a companywide policy against overtime.  Plaintiff worked and received overtime pay 18 out of 27 pay periods during the time period relevant to this action. *Mueller Decl.* ¶ 7, Ex. A.  In addition, Raynette Ciufo worked and received overtime pay 2 out of 10 pay periods during the time period relevant to this action.  *Id.* ¶ 8, Ex. B. Marina Del Rio worked and received overtime pay 31 out of 31 pay periods during the time period relevant to this action.  *Id.* ¶ 9, Ex. C.  Gail Chillinsky worked and received overtime pay 20 out of 31 pay periods during the relevant time period.  *Id.* ¶ 10, Ex. D.

As noted above, Jenny Craig's only official policy regarding off the clock work requires employees to report all the time worked and expressly prohibits off the clock work.  Plaintiff's anecdotal evidence to the contrary is insufficient to demonstrate that a contrary policy or practice existed and was uniformly applied to employees companywide, particularly since Jenny Craig submits the declarations of putative class members who maintain that they were never required to work off the clock or perform off-duty tasks.  Plaintiff offers insufficient evidence that any alleged off the clock work was due to a uniform policy or practice promulgated by Jenny Craig companywide, rather than a result of an individual employee's own choices regarding how to manage her time.  As such, "the individualized assessment necessary to ascertain whether there were in fact any employees who were told to work off the clock would not be susceptible to common proof."  *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 642 (N.D. Cal. 2010).  Nor does Plaintiff present evidence of a companywide policy of expecting employees to work uncompensated overtime.  *See Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) (noting that the employee's off the clock claim lacked commonality because the employee had not "presented substantial evidence of a systematic company policy to pressure or require employees to work off the clock").  And the anecdotal evidence suggests that overtime, when it occurred, was paid.

Accordingly, certification of Classes A and B is not appropriate under Rule 23(a)(2).

### c) Class C: The Meal and Rest Period Class

Plaintiff also seeks to certify a subclass of current and former employees who missed meal and rest periods, or had to take short or late meal breaks, due to Jenny Craig's "never turn a client away" policy and "two people rule."

Plaintiff cannot point to any official policy of Jenny Craig that required or coerced employees to forgo their meal or rest periods. As noted above, Jenny Craig's compensation policies are to the contrary; they call for employees to take their meal and rest breaks and to report all time worked. *See In re Autozone, Inc. Wage and Hour Employment Practices Litig.*, __ F.R.D. __, 2012 WL 6679983 at *12, 20 (N.D. Cal. Dec. 21, 2012) (written policy that differs from asserted practice "weigh[s] against, not for, certification").

Instead, Plaintiff asserts that she and other employees were unable to take timely or complete meal periods when only two employees were working at a centre at a time due to Jenny Craig's "two people rule." Plaintiff further contends that employees missed breaks in an effort to comply with Jenny Craig's "never turn a customer away" policy. Plaintiff presents anecdotal evidence to support her assertions, including her own testimony. However, the record does not support Plaintiff's contention that these policies resulted in ubiquitous labor code violations.

Plaintiff's own testimony demonstrates the lack of a uniformly applied customer service policy prohibiting employees from taking their meal and rest breaks. According to Plaintiff, some days she took her complete lunch break, some days she did not; some days her centre was too busy for lunch, some days it was not; some days her supervisor would make her feel guilty about taking a lunch break, some days she did not. For example, during her deposition Plaintiff was asked about taking a meal break on a busy Saturday:

Q     And you can't leave?

| | | |
|---|---|---|
| 1 | A | You can, but like I said, the center needs. You just stay there. |
| 2 | Q | Do you know what would have happened if you had just left? Had you ever done that before? |
| 3 | | |
| | A | Yeah, I have. |
| 4 | | |
| | Q | So say, "It's my lunch, I have to leave"? |
| 5 | | |
| | A | Yeah, I've done that before. |
| 6 | | |
| | Q | And were you talked to by anybody? |
| 7 | | |
| | A | Yeah, Alicia [the centre director] talked to me a couple times. |
| 8 | | |
| | Q | And said what? |
| 9 | | |
| 10 | A | About the center needs, the quota. And she would always mention, "We don't want the center to close." |

*Coleman Depo.* at 189-90. According to Plaintiff, her supervisor, Alicia, emphasized the needs of the centre and had a way of "making you feel guilty for leaving." *Id.* at 191. Plaintiff's testimony establishes, at best, that her interactions with a particular supervisor, at a particular centre location, resulted in missed meal breaks on some occasions. But it does not support Plaintiff's claim of a companywide policy or practice of forcing employees to miss meal breaks in the name of upholding customer service standards. Furthermore, the testimony of other employees' experiences differs from Plaintiff's, depending on factors such as centre location and the business load on a given day. These disparate experiences do not support Plaintiff's claim that Jenny Craig's customer service or safety policies uniformly interfered with employees' meal or rest breaks.

Plaintiff fails to demonstrate that Jenny Craig's "never turn a client away" policy had a uniform effect on her or other employees' ability to take meal or rest breaks. Jenny Craig's "never turn a client away" policy rather "reflects precisely the sort of approach that one would expect from a business that promotes a high level of customer service. . . ." *York v. Starbucks Corp.*, 2011 WL 8199987, at *24 (C.D. Cal. Nov. 23, 2011). Likewise, Plaintiff does not establish that Jenny Craig implemented its "two people rule" in such a way that companywide labor code

11cv1301

violations ensued. And Jenny Craig's 30(b)(6) witness, Chrystal Danesteh, confirmed during deposition that the "two people rule" is an official safety policy of Jenny Craig, not a compensation policy or even a customer service policy. *Danesteh Depo*. at 23.

Finally, Plaintiff claims that Jenny Craig had a uniform practice of not paying the required premium for late or short meal periods. *See Brinker*, 53 Cal.4th at 1040 n.19 (explaining that an employer who "knew or reasonably should have known" that an employee skipped a 30-minute meal break owes one hour of "premium" pay). According to Plaintiff, Jenny Craig's payroll system was designed to pay premiums only for missed lunches, but not for short or late ones. Plaintiff points to the deposition testimony of Kim Mueller to support her claim that Jenny Craig promulgated a companywide practice of not paying the one-hour premium required by California law for a short meal break. *Mueller Depo*. at 42. During deposition, Mueller responded to a question regarding the eTime Verification System, and indicated that the premium pay would not be paid in the system for a short or late meal break, only for a completely missed meal break. Plaintiff's counsel clarified that the question related directly to the operation of the eTime system – not an official compensation policy – with the follow up statement: "So, essentially, to pay the one-hour premium, the system looks for missed lunch punches out and in. . . ." *Id*.

The operation of the eTime payroll system is a distinct issue from whether Jenny Craig had a compensation policy of not paying the one hour premium for short or late meal breaks. Plaintiff does not point to any such policy, but rather relies upon this feature of the eTime system to argue that any time an employee did not receive a one hour premium payment, it was the fault of Jenny Craig's companywide "practice." This evidence falls short of establishing anything of the sort, however, as Jenny Craig presented evidence that payroll administrators were aware of this feature of the payroll system and accounted for it by ensuring that short

or late meal breaks were entered into the system manually via time edits. *Mueller Decl.* ¶¶ 5, 14, Ex F. The ability to manually enter time edits is likely why, when asked whether she knew of any employee who had complained about not getting premium pay for a short lunch break, Kim Mueller responded no. *Id*.

In sum, the evidence presented to the Court does not establish common wage and hour practices resulting in a class of employees missing meal and rest periods, being forced to take short or late meal periods, or not being paid a one hour premium when required under California law. Certification of Class C is therefore not appropriate under Rule 23(a)(2).

### d) Class F: The Split Shift Class

Plaintiff proposes a subclass of current and former employees who were not paid the required split shift premium for working split shifts of less than three hours. Plaintiff asserts that the following question is common to this proposed subclass: whether Jenny Craig's policy regarding split shifts is facially invalid because it only pays a split shift premium for a three hour gap between shifts, when the law actually invokes the rule for any gap over one hour.

California law requires that when an employee works a split shift, one hour's pay at the minimum wage shall be paid in addition to wages for that workday. *See* Cal. Code Regs. tit. 8, § 11040, subd. 4(C). Plaintiff alleges that Jenny Craig only pays the one hour split shift premium when there is a three-hour gap in the workday (as opposed to a gap of one or two hours), and as such, Jenny Craig's split shift policy is illegal on its face. Plaintiff points to the testimony of Kim Mueller in support of her claim. During her deposition, Mueller was asked to describe a split shift. She responded:

    A      When an employee works in the morning for a three- or four-hour period, has a break in three hours, comes back and works for three or four more hours in the afternoon, receives an additional hour in the day for working the split shift.

    Q      And how long does the gap have to be in the middle of the day

1                  before the split shift rule clicks in?

2     A     Three hours.

3     ( . . . )

4     Q     Do you know if the split shift rule that says you'll get paid an extra
                 hour if there's a gap of three hours in the middle of your workday,
5                  is that in the employee manual, to your knowledge?

6     A     Yes, it is.

7 *Mueller Depo.* at 42, 48. Jenny Craig's August 2010 Centre Operations Manual

8 provides the following policy statement regarding "Scheduling Shifts," which is

9 consistent with Mueller's explanation above:

10     Employees may be scheduled for two kinds of shifts:

11     **Straight shift**: Any shift where all the Working Hours for that day are
    continuous**.**
12

13     **Split shift**: A shift where the employee works 3 or 4 hours in the morning, has
    a break of at 3 hours, and then returns to work in the same day for another 3
    or 4 hours. The time actually worked by the employee must add up to at least
14     7 hours for the day.

15 *See 2010 Operations Manual* at 6-B-3.

16         Contrary to Plaintiff's claim, Jenny Craig's split shift policy does not facially

17 violate California's labor code. It is a scheduling policy, which defines how Jenny

18 Craig *schedules* split shifts – not how Jenny Craig compensates its employees for

19 working split shifts. A "split shift" is defined as "a work *schedule*, which is

20 interrupted by non-paid non-working periods *established by the employer*, other than

21 bona fide rest or meal periods." *Gonzalez v. Millard Mall Servs*., 281 F.R.D. 455,

22 464 (S.D. Cal. 2012) (emphasis added), citing Wage Order 4-2001 § 2(Q). Jenny

23 Craig is permitted, under California law, to define a split shift as having a break of

24 three hours. What Jenny Craig may not do is fail to pay the one hour premium when

25 such a shift is worked. However, Plaintiff has presented no evidence to suggest that

26 Jenny Craig has a companywide policy of refusing to pay the split shift premium as

27 required, nor does Plaintiff claim to have suffered any injury regarding split shift

28 pay.

          11cv1301

Jenny Craig presents declaration testimony from putative class members stating that they always received split shift premium pay, split shifts are always scheduled with a three hour break per the company's scheduling policy, and that any time they had a break of less than three hours between shifts it was due to longer lunch breaks or absences to conduct personal business; any such breaks were not part of working a split shift. *See, e.g, Schall Decl.* ¶¶ 23-26.

As such, Plaintiff fails to meet her burden of showing that Jenny Craig has a common policy of not paying its employees split shift premiums in accordance with California law and certification of Class F is not appropriate.

  **e)**    **Classes D, E, and G: The Wage Statement, Waiting Time Period, and Injunctive Relief Classes**

Plaintiff's claims regarding inaccurate wage statements and waiting time penalties are derivative of her overtime, off the clock, and meal/rest period claims. Plaintiff's claim for injunctive relief is derivative of her substantive claims. Because Plaintiff fails to demonstrate commonality with respect to Classes A-C and F, she cannot do so with respect to these derivative subclasses.

**3.**   ***Rule 23(b)(3)***

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members . . ." Thus, while Rule 23(a)(2) "is about invoking common questions, . . . Rule 23(b)(3) requires a district court to formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Dukes*, 603 F.3d at 593 (citations and quotations omitted). The analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2) . . . ." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

As explained above, Jenny Craig has facially lawful compensation policies. The Court would have to engage in individualized inquiries to determine whether

certain centres deviated from those policies, and if so, why. Plaintiff has not shown by a preponderance of the evidence that Jenny Craig's customer service, scheduling, or safety policies, or its payroll practices, have resulted in companywide labor code violations. "In the absence of any common policy, an individualized inquiry will be required" as to whether Jenny Craig failed to pay any putative class member for all hours worked, or failed to provide the requisite meal and rest periods. *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641 (N.D. Cal. 2010). Thus, Plaintiff cannot meet Rule 23(b)(3)'s requirements in this case.

### *4.* *Conclusion*

Numerous courts within the Ninth Circuit have held that commonality exists where a defendant's uniform policy allegedly violates California's wage and hour laws. *See e.g., Avilez v. Pinkerton Gov. Serv.*, 286 F.R.D. 450 (C.D. Cal. 2012) (finding commonality where defendant had a policy and practice that allegedly failed to provide class members off-duty meal breaks); *Schulz v. QualxServ, LLC*, 2012 WL 1439066, at *4 (S.D. Cal. 2012) (finding commonality where plaintiffs challenged uniform policies in alleging a failure to provide meal and rest breaks); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010) (granting class certification and finding commonality because defendant's "policies were common across [d]efendant's California facilities" and case was subject to common proof, namely whether the "policies deprived the putative class members of meal periods," and "common legal questions, such as [d]efendant's obligations" under the California Labor Code).

Here, however, Plaintiff fails to demonstrate that any of Jenny Craig's official compensation policies are facially invalid or otherwise applied uniformly to employees in violation of California's labor code. Similarly, Plaintiff fails to show that Jenny Craig's customer service and safety policies were used companywide as grounds for denying overtime compensation, failing to pay employees for off the clock work, or to prevent employees from taking meal and rest breaks. The

anecdotal evidence on the record demonstrates that common questions regarding these claims would not predominate over individualized inquiries. Putative class members had different experiences, did not consistently miss meal or rest periods, and in fact received overtime pay when they worked overtime.

Plaintiff fails to present "substantial evidence of a systematic company policy to pressure or require employees to work" uncompensated overtime, off the clock, or without meal and rest periods. *Brinker*, 53 Cal. 4th at 1051. This is a critical distinction that differentiates Plaintiff's case from those in which similar proposed subclasses have been certified, and it compels denial of her motion for class certification.

### CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's motion for class certification.

**IT IS SO ORDERED**.

DATED: November 27, 2013

Hon. Michael M. Anello
United States District Judge

11cv1301