UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| NASHONNA COLEMAN, | CASE NO. 11cv1301-MMA(DHB) |
|---|---|
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| v. | |
| JENNY CRAIG, INC., | [Doc. No. 69] |
| Defendant. | |

Plaintiff Nashonna Coleman brings this action against Defendant Jenny Craig, Inc. for violations of California's wage and hour laws. Doc. No. 1. On November 27, 2013, the Court denied Plaintiff's motion for class certification. Doc. No. 51. Plaintiff now moves the Court to reconsider its ruling pursuant to Federal Rule of Civil Procedure 59(e). Doc. No. 69. For the reasons set forth below, the Court **DENIES** Plaintiff's motion for reconsideration.

## BACKGROUND

Plaintiff is a former hourly, non-exempt employee of Defendant, Jenny Craig, Inc., a nationwide weight loss company. Plaintiff alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, and California wage and hour laws. Specifically, Plaintiff alleges that Defendant: (1) failed to pay regular and overtime compensation in violation of the FLSA; (2) failed to pay wages owed in violation of California Labor Code sections 201, 203, 216, 218.5 and 227.3; (3)

failed to pay overtime compensation in violation of California Labor Code sections 510, 1194, and 1198; (4) failed to timely pay wages upon termination in violation of California Labor Code sections 201, 202, and 203; (5) failed to provide meal and rest breaks in violation of California Labor Code sections 226.7 and 512; (6) engaged in unfair competition in violation of California Business and Business and Professions Code sections 17200, *et seq.*; and (7) is subject to penalties pursuant to California Labor Code section 2699.

Plaintiff asserts that her claims are suitable for class certification because they raise questions common to the proposed class, specifically: (1) whether Defendant's policies and/or practices violate California's wage and hour laws, and (2) whether the class members have been denied wages, overtime compensation, meal and rest breaks, and split shift premiums, as a result of these unlawful policies and/or practices. Plaintiff moved to certify a California class of 1,055 former and current employees of Jenny Craig. Within this class of employees, she identified several proposed subclasses. The Court denied the motion as to all proposed subclasses. Doc. No. 63.

One subclass that Plaintiff moved to certify was "All current and former employees of Defendant who held the hourly, non-exempt positions. . .at Defendant's California centres between March 18, 2010 and June 30, 2011 ('the Class Period') and who: . . .were not provided with meal and rest periods." Doc. No. 51. The Court ruled, *inter alia*, that Plaintiff failed to satisfy the commonality requirement for class certification with respect to her Meal and Rest Break Class when she produced evidence that Defendant's uniform compensation system was not programmed to automatically pay employees the premiums for short or late meal breaks. *Id.* The Court determined that this feature of Defendant's payroll system did not amount to a policy or practice of non-payment of premiums for short or late lunches, because the employees themselves were able to submit time edit requests for premiums whenever their meal breaks were short or late. *Id.*

Plaintiff now moves for reconsideration of the Court's order denying her motion for class certification. Doc. No. 69. Plaintiff argues that there has been an intervening change in the controlling law that requires the Court to alter its previous ruling. Specifically, Plaintiff asserts that *Benton v. Telecom Network Specialists, Inc.*, 220 Cal. App. 4th 701, 705 (Cal. Ct. App. 2013), is new, relevant, and controlling case law. Plaintiff contends that the Court's denial of class certification as to her Meal Break subclass was "clearly erroneous in light of California's new authority that requires employers to promulgate a policy informing employees of their rights." Doc. No. 69 at 3. Plaintiff argues that Jenny Craig employees were not informed of their entitlement to premium payments for short or late meal periods, and pursuant to *Benton*, "Defendant must have a <u>uniform policy advising</u> employees of their rights to such premiums," and Defendant's failure to adopt such policy warrants certification of a meal break subclass. *Id.* at 2 (emphasis in original).

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 59(e), district courts have the power to reconsider a judgment by motion. Fed. R. Civ. P. 59(e). A motion to reconsider a judgment under Rule 59(e) seeks "a substantive change of mind by the court." *Tripati v. Henman*, 845 F.2d 205, 205 (9th Cir. 1988). Rule 59(e) is an extraordinary remedy and, in the interest of finality and conservation of judicial resources, should not be granted absent highly unusual circumstances. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999). Rule 59 may not be used to relitigate old matters, raise new arguments, or present evidence that could have been raised prior to entry of the judgment. *Exxon Shipping Co. v. Baker*, 544 U.S. 471, 486-87 (2008).

Under Rule 59(e), it is appropriate to alter or amend a judgment if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3)

there is an intervening change in controlling law." *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). To carry the burden of proof, a moving party seeking reconsideration must show more than a disagreement with the Court's decision or a recapitulation of the cases and arguments previously considered by the court. *See United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001).

## DISCUSSION

### A. Change in Controlling Law

Under Rule 59(e), an intervening change in the controlling law is an appropriate ground to grant reconsideration. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Plaintiff argues that the California Court of Appeal's opinion in *Benton v. Telecom Network Specialists,* issued on October 16, 2013, was an intervening change in controlling law. Doc. No. 69. However, as *Benton* neither changes nor extends the rule enunciated in *Brinker v. Superior Court*, as applied in *Bradley v. Networks International, LLC*, and *Faulkinbury v. Boyd & Associates, Inc.*, Plaintiff's proffered case is not an "intervening change in controlling law."

#### 1. *Brinker v. Superior Court*

In *Brinker*, plaintiffs sought class certification of various wage and hour claims on behalf of restaurant employees, requesting certification of several subclasses, including (1) a class alleging employees were not provided their required 10–minute rest breaks and (2) a class alleging employees were not provided timely and sufficient meal breaks. *Brinker v. Superior Court*, 53 Cal. 4th 1004, 1017 (2012). Although the trial court ruled plaintiffs' rest break claim was amenable to class treatment, the appellate court disagreed, explaining, in part, that "because rest breaks can be waived. . .'any showing on a class basis that plaintiffs or other members of the proposed class missed rest breaks or took shortened rest breaks would not necessarily establish, without further individualized proof, that [the

defendant] violated'. . .Wage Order No. 5." *Id.* at 1033.

The California Supreme Court granted review "to resolve uncertainties in the handling of wage and hour class certification motions" and held that the trial court had properly certified plaintiffs' rest break claim because "[c]lasswide liability could be established through common proof" that the defendant's uniform rest break policy violated those requirements. *Id.* In reaching its holding, the California Supreme Court rejected the appellate court's reasoning that the defendant would become liable only upon a showing that each class member missed his or her break period as a result of the allegedly unlawful policy, rather than through waiver: "An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry. If it does not—if, for example, it adopts a uniform policy authorizing and permitting only one rest break for employees working a seven-hour shift when two are required—it has violated the wage order and is liable." *Id*. at 532. The California Supreme Court concluded that, for the purposes of deciding the certification issue, it was sufficient that plaintiffs' "theory of liability—that [defendant] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment." *Id.*

### 2. *Bradley v. Networkers International, LLC*

In *Bradley*, plaintiffs sought to certify a class of telecommunications technicians in a putative class action alleging violation of wage and hour laws by failing to pay overtime and failing to adopt a policy providing rest and meal breaks. *Bradley v. Networkers International, LLC*, 211 Cal. App. 4th 1129, 1133 (2012). In support of their motion for certification, plaintiffs submitted numerous class declarations, asserting that the technicians' job duties and working conditions differed substantially from the job description set forth in Networker's standardized "Independent Contractor Agreement." *Id.* at 1153. Each declarant also denied having been paid overtime or receiving meal or rest breaks. *Id.* In addition to the

declarations, plaintiffs submitted discovery responses in which Networkers admitted that: (1) it did not pay overtime to its technicians members until the 2005 reclassification; (2) it did not have a rest or meal break policy or maintain records of rest or meal breaks; and (3) because it did not supervise its technicians, it did not know whether the workers took rest or meal breaks, nor did it know the extent or frequency of such breaks. *Id.* at 1140. The trial court denied certification for two reasons. First, it explained that individual issues predominated as to whether each class member qualified as an independent contractor. *Id.* Second, the court concluded that certification was improper because, to establish Networkers' liability, each technician would have to individually demonstrate "the actual existence of damages and/or the manner of incurring damages." *Id.*

In its initial (now vacated) opinion, the appellate court affirmed. On remand from the California Supreme Court, however, the appellate court concluded that, under the analysis set forth in *Brinker,* the trial court had improperly focused on individual issues related to damages, rather than on the plaintiffs' theory of liability. *Id.* at 1151. According to the appellate court, *Brinker* had clarified that "in ruling on the predominance issue in a certification motion, a court must focus on the plaintiff's theory of recovery and assess the nature of the legal and factual disputes likely to be presented and determine whether individual or common issues predominate." *Id.* at 1150. The appellate court further explained that "plaintiffs' theory of recovery [wa]s based on Networkers' (uniform) lack of a rest and meal break policy and its (uniform) failure to authorize employees to take statutorily required rest and meal breaks. The lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof. Although an employer could potentially defend these claims by arguing that it did have an informal or unwritten meal or rest break policy, this defense is also a matter of common proof." *Id.*

*Bradley* further explained that *Brinker* had "expressly rejected. . .that evidence showing some employees took rest breaks and other employees were offered rest

breaks but declined to take them made class certification inappropriate." *Id.* at 1143. Rather, according to the appellate court, *Brinker* made clear that "when an employer has not authorized and not provided legally-required meal and/or rest breaks, the employer has violated the law" and is liable. *Id.* at 1151.

### 3.     *Faulkinbury v. Boyd & Associates, Inc.*

In *Faulkinbury,* the plaintiffs sought to certify a wage and hour class action on behalf of 4,000 current and former security guards. *Faulkinbury v. Boyd & Associates, Inc.*, 216 Cal. App. 4th 220, 224 (2013). Plaintiffs asserted that the defendant had violated meal and rest period requirements by: (1) forcing its employees to sign an agreement stating that the nature of their work required them to take their meal periods "on-duty" and (2) failing to authorize or permit rest breaks. *Id.* The trial court denied certification, concluding that plaintiffs' claims turned on individual issues regarding the circumstances of each security officer's employment conditions. *Id.* at 223.

Upon remand from the California Supreme Court, the appellate court concluded that *Brinker* had rejected the mode of analysis set forth in its original opinion. *Id.* at 234. As to plaintiffs' meal break claim, the appellate court explained that *Brinker* clarified the defendant's liability would attach "upon a determination that [defendant's] uniform on-duty meal break policy was unlawful. . . Whether or not the employee was able to take the [off-duty] required break goes to damages, and the fact that individual [employees] may have different damages does not require denial of the class certification motion." *Id.* at 235. The appellate court reached a similar conclusion regarding plaintiffs' rest break claim, explaining that plaintiffs had alleged the defendant "had no formal rest break policy" and required employees to stay at their post for their entire shift. *Id.* at 236. The appellate court ruled that, under the analysis set forth in *Brinker,* the "the lawfulness of [defendant's] lack of rest break policy and requirement that all security guard employees remain at their posts can be determined on a class-wide basis." *Id.* at 237.

### 4. *Benton v. Telecom Network Specialists, Inc.*

Plaintiff contends that *Benton* expands the California Supreme Court's ruling in *Brinker*, effecting a change in the law. Plaintiff asserts that while *Brinker* addressed a defendant's formal policy as a violation of California labor law, *Benton* involved the absence of a policy. Plaintiff argues that this aspect of the California appellate court's ruling in *Benton* is of critical importance here, because Plaintiff seeks class certification on the grounds that Defendant's lack of a policy advising employees of their rights to premium pay resulted in violations of applicable wage and hour laws.

In *Benton*, telecommunications technicians filed a wage and hour class action lawsuit against a telecommunications company, alleging violations of meal and rest break requirements and overtime requirements. *Benton v. Telecom Network Specialists, Inc.*, 220 Cal. App. 4th 701, 705 (2013). As in *Bradley,* the plaintiffs' theory of legal liability in *Benton* was that the defendant violated wage and hour requirements by failing to adopt a policy authorizing and permitting its technicians to take meal or rest break periods. *Id.* at 707. In the plaintiffs' view, the defendant was obligated to implement procedures ensuring that technicians received notice of their meal and rest period rights and were permitted to exercise those rights. *Id.* The trial court concluded that class certification was improper because the parties' evidence showed that some technicians' working conditions permitted them to take meal and rest breaks, while others did not. *Id.* at 725. The appellate court reversed, holding that the court improperly focused on whether individualized inquiries would be required to determine which technicians had missed their meal and rest periods and reasoning that this mode of analysis was expressly rejected by *Brinker*, *Bradley*, and *Faulkinbury*. *Id.* at 729-30.

The appellate court expressly followed the rule enunciated in *Brinker* and reaffirmed in both *Bradley* and *Faulkinbury*, stating: "We agree with *Bradley* and *Faulkinbury*'s conclusion that, under *Brinker*, the fact that individual inquiry might

be necessary to determine whether individual employees were able to take breaks despite the defendant's allegedly unlawful policy (or unlawful lack of a policy) is not a proper basis for denying certification. Rather, for purposes of certification, the proper inquiry is 'whether the theory of recovery advanced by the plaintiff is likely to prove amenable to class treatment.'"

Plaintiff argues that *Benton* stands for the general proposition that a lack of a uniform policy is a certifiable issue. However, the Court of Appeal's holding in *Benton* was narrow: "We conclude only that, under the circumstances presented here, the mere fact that TNS's co-employer entities had diverse meal and rest break policies in place during the class period was not, standing alone, a proper basis for denying certification of plaintiffs' meal and rest break claims against TNS." *Id.* at 729. The court in *Benton* applied the rule from *Brinker* to conclude that, despite the lack of a uniform policy, the plaintiff's theory could be proved or disproved with common facts and law. *Id. Benton*, therefore, follows *Faulkinbury* to conclude that absence of a formal policy alone does not defeat certification. *See Faulkinbury*, 216 Cal. App. 4th at 237 (holding that denial of class certification was improper because, *inter alia*, the lawfulness of defendant's lack of policy would be determined on a classwide basis). *Benton* did not effect a change in the law; it simply applied existing controlling law.

Moreover, the Court notes that *Benton v. Telecom Network Specialists, Inc.* is neither "intervening" nor "controlling" law. The California Court of Appeal's opinion in *Benton v. Telecom Network Specialists* was issued on October 16, 2013.[1] *Benton* is not "controlling" because it is a California appellate court's interpretation of *Brinker*. *See generally Strother v. Southern Cal. Permanente Medical Group*, 79

---

[1] The Court's order denying class certification issued on November 27, 2013. The parties presented oral argument at a motion hearing held on November 4, 2013. As such, both parties and the Court could and should have been aware of any applicable case law in existence prior to those dates. That the *Benton* decision issued more than a month in advance of this Court's order strongly undermines the argument that *Benton* should be considered an "intervening" change in the law for purposes of the instant motion for reconsideration.

F.3d 859, 865 (9th Cir. 1996) ("When interpreting state law, federal courts are bound by decisions of the state's *highest* court.'") (emphasis added).

For the purposes of Rule 59(e), the issuance of *Benton* is not an intervening change in controlling law that warrants reconsideration of this Court's prior ruling. Therefore, reconsideration is not appropriate on these grounds. *See* Fed. R. Civ. P. 59(e); *Kona Enters.*, 229 F.3d at 890.

**B.   Clear Error**

Plaintiff also contends that reconsideration is proper because the Court's decision was "clearly erroneous" in light of *Benton*, which, according to Plaintiff, requires employers to promulgate a policy informing employees of their rights. However, Plaintiff conflates the "clear error" and "intervening change in controlling law" grounds for reconsideration. As discussed above, *Benton* did not change the law applicable to this matter and does not control the outcome in this case.

Defendant argues that "Plaintiff uses a motion for reconsideration and the *Benton* ruling to make a new argument that she could have reasonably raised earlier in the litigation." Doc. No. 73 at 4. Plaintiff's efforts go well beyond this. Rather than just presenting a new argument, Plaintiff presents an entirely new theory of liability.

California Labor Code section 226.7 prohibits an employer from requiring an employee to work during meal or rest periods mandated by an applicable order of the Industrial Welfare Commission. Cal. Lab. Code § 226.7(a). "If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Lab. Code § 226.7(b). Employers are also statutorily prohibited from requiring an employee to work for more than five hours per day "without providing the employee" with a meal period of at least 30 minutes, except under certain specified circumstances.

Cal. Lab. Code § 512(a). An employer who fails "to provide" an employee a meal period that complies with these requirements must pay the employee an additional hour of pay at the employee's regular rate of compensation. Cal. Lab. Code § 226.7(b). As such, an employer owes an employee the one-hour premium if the employer does not provide a meal break at all, provides a late meal break (i.e., provides a meal break, but only after the employee has worked more than five hours), or provides a short meal break (i.e., a meal break lasting less than 30 minutes).

Here, Plaintiff has alleged violations of sections 512 and 226.7 of California's Labor Code. In her motion to certify these claims, Plaintiff's argument was two-fold. First, she asserted that Defendant has a common policy of requiring employees to miss meal periods, or take short or late meal breaks, due to companywide customer service expectations. The Court found that Plaintiff's proffered evidence did not establish common policies or practices resulting in a class of employees missing meal and rest periods, or being forced to take short or late meal breaks.

Second, Plaintiff argued that Defendant has a common practice of paying the required one-hour premium only for completely missed meal breaks, and not for late or short meal breaks. Plaintiff's grievance was with the operation of Defendant's payroll system, which is designed to automatically pay the required one-hour premium only for a completely missed meal break. In instances where an employee must take a late or short meal break, they are instructed to submit time edit requests that are manually entered into the payroll system. The Court found this evidence insufficient to demonstrate that Defendant has a common practice of failing to pay a subclass of employees a one-hour premium when required by law to do so.

Plaintiff now argues that "[a]lthough Defendant had a practice that short or late meal breaks could be manually entered into the system via time edits, the practice is illegal under *Brinker* because in order to request a premium payment for short or late lunches, an employee must first know he or she is entitled to such

premium – of which there is not evidence." Doc. No. 69. Citing to *Benton* for support, Plaintiff asserts that "Defendant must have a uniform policy advising employees of their rights to such premiums," which Defendant does not. *Id* at 2. This is not merely a new argument in support of certification of a meal break subclass. It is an entirely new theory of liability. Plaintiff originally based her motion for class certification on the *existence* of a common practice – a companywide payroll system that requires short or late meal breaks to be manually entered into the system – resulting in employees not being paid the one-hour premium. Now, she asserts that it is the *lack* of a common policy – failure to inform employees of their rights – that resulted in employees not being paid the one-hour premium.

Plaintiff cites no authority for her proposition that an employer must inform its employees of their entitlement under certain circumstances to a one-hour premium payment. Regardless, the allegation rests upon a theory of liability not previously asserted. A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

The Court did not "clearly err" in light of *Benton*.

**C. Manifest Injustice**

Plaintiff asserts in her reply brief that "Defendants' Opposition to the reconsideration motion tellingly does not address the manifest injustice resulting from the Court's denial of class certification on short or late meal periods." Doc. No. 74 at 1. Plaintiff fails to acknowledge, however, that she did not include any argument regarding manifest injustice in her moving papers. Alleging manifest injustice for the first time in her reply brief is not appropriate, and the Court need not consider Plaintiff's argument. *See Coos County v. Kempthorne,* 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a

reply brief); *United States v. W.R. Grace*, 504 F.3d 745, 766 (9th Cir. 2007) (refusing to consider documents submitted with a reply brief), cert. denied, 128 S. Ct. 2964, 171 L. Ed. 2d 887 (2008).

## CONCLUSION

Having reviewed its previous ruling, the Court is satisfied that it committed no error. Plaintiff has not provided any newly discovered evidence. Additionally, there has been no intervening change in controlling law. Accordingly, the Court **DENIES** Plaintiff's motion for reconsideration.

**IT IS SO ORDERED**.

DATED: February 27, 2014

*[signature]*

Hon. Michael M. Anello
United States District Judge